## EVANSVILLE BANK *v.* GERMAN-AMERICAN BANK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 85. Argued November 20, 1894. — Decided January 7, 1895.

In June, 1887, the Fidelity Bank of Cincinnati had a contract with the German-American Bank of Peoria "to credit sight items on any point in the United States east of Illinois, where there are banks, at par; and to make collections on same points" and "to credit the same at par when collected." At that time there also existed an arrangement between the Fidelity Bank and the Bank of Evansville in Indiana for mutual and reciprocal collection business. On the 14th of that month the German-American Bank sent to the Fidelity Bank for collection a sight draft on a firm in Terre Haute, endorsed "for collection." On the 16th this draft was forwarded to the Evansville Bank for collection. On the 18th the draft was sent by the Evansville Bank to a bank in Terre Haute for collection, and was collected by the latter bank on the 20th of June. On the morning of the 21st, before banking hours, the Evansville Bank received news of the collection, and after crediting the Fidelity Bank with it, as of June 20th, notified the Fidelity Bank of the payment and of the entry to credit by a letter which was received there on the 22d. On the 20th the Fidelity Bank was, and for ten days before it had been, insolvent. It was not open for business after the 20th, and on the 27th passed into the hands of a receiver. *Held,* that the Fidelity Bank, though it acquired the mere legal title to the draft, never became its equitable owner; that the notice on the draft that it was for collection bound all parties into whose hands it came; that the Evans-

ville Bank could not by its entry of credit to the Fidelity Bank release itself of its obligation to the German-American Bank; and that the mere fact that news of the condition of the Fidelity Bank had not reached the Evansville Bank at the time it made the entry was immaterial.

*Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U. S. 50, shown not to conflict with this decision.

THIS case was tried by the court, a jury having been waived. A special finding of facts was made. From this it appears that during the month of June, 1887, the Fidelity National Bank of Cincinnati, Ohio, (hereinafter called the Fidelity Bank,) and the German-American Bank of Peoria, Illinois, (hereinafter called the German-American Bank,) the plaintiff in the court below, were mutually transacting the business of collecting mercantile paper each for the other, and were keeping ledger accounts with each other, under a contract entered into in the month of September, 1886. This contract was made by correspondence, which resulted in an acceptance by the German-American Bank of the following proposition of the Fidelity Bank: "We will credit sight items on any point in the United States east of Illinois, where there are banks, at par; and make collections on same points, which, when paid, will credit at par."

On June 14, 1887, the German-American Bank purchased from the Great Western Distilling Company of Peoria a draft, of which the following is a copy:

"Great Western Distilling Co., Distillers and Refiners of Spirits.

"$6926.15.

"PEORIA, ILLS., June 14th, 1887.

"At sight pay to the order of Weston Arnold, cashier, sixty-nine hundred twenty-six 15-100 dollars.

"J. B. GREENHUT,

"Sec. and Treas.

"To Terre Haute Distilling Co., Terre Haute, Ind.

"No. 4357."

and on the same day transmitted it to the Fidelity Bank in the following letter:

"PEORIA, ILLS., June 14th, 1887.

"Ammi Baldwin, Esq., cash., Cin'ti, O.

"DEAR SIR: Enclosed find for collection and credit items as stated below.          Respectfully yours,

"WESTON ARNOLD, Cashier.

"Return at once if unpaid, giving reasons; protest all paper unless otherwise instructed.

"Terre Haute Dist. Co........No pro........$6926 15."

At the time of its transmission it was endorsed:

"Pay Fidelity National Bank of Cincinnati, O., or order, for collection for German-American Nat'l Bank of Peoria, Ills.

"W. ARNOLD, Cash."

this endorsement being made by a rubber stamp, which had been forwarded to the German-American Bank by the Fidelity Bank. At the time the German-American Bank transmitted this draft to the Fidelity Bank it credited cash with the full amount of said draft and charged the same to the said Fidelity Bank in its ledger account with said bank as a debit against the said Fidelity Bank. Such entries were made in pursuance of the right which the plaintiff claimed to have under its said contract and the custom of bankers, a custom expressly found to exist throughout the United States, to enter, at the time of transmission, sight paper transmitted to the said Fidelity Bank for collection upon its ledger account with the said Fidelity Bank, and were provisional in that the plaintiff at the time of making said entries intended to exercise the right which it also claimed to have under its said contract with the said Fidelity Bank and the like custom of bankers to cancel each of said entries by a counter-entry in case the draft was not paid. The making of such entries was not communicated to the Fidelity Bank. The draft was also before its said transmission to the Fidelity Bank entered on the remittance register of the German-American Bank as remitted to the Fidelity Bank.

The German-American Bank never at any time drew drafts

upon the Fidelity Bank against collections transmitted to it until it had received from the latter notice of payment thereof. Upon the receipt of this draft on June 15, 1887, no entry representing it was made by the Fidelity Bank in its general ledger account with the German-American Bank, but only on the collection register. Between the Fidelity Bank and the Old National Bank of Evansville, Indiana, (hereinafter called the Old National Bank,) the defendant in the court below, there then existed an arrangement for mutual and reciprocal collection business, and on June 16 the draft was forwarded by the former to the latter bank with this additional endorsement: "Pay Old National Bank, Evansville, Ind., cashier, or order, for collection. Please report by this number, 66,923. Fidelity National Bank, Cincinnati, O. Ammi Baldwin, Cashier." The letter enclosing the draft was in these words:

"CINCINNATI, 6 | 16, 1887.

"Old National Bank, ——, cashier, Evansville, Ind.

"Dear Sir: I enclose for collection and credit as below stated.

"Very respectfully yours,

"AMMI BALDWIN, Cashier.

\*      \*      \*      \*      \*

"Do not hold, but protest against all collections not accepted or paid, unless otherwise instructed by us. Advise by date of letter. Please report collections by numbers."

On June 18 the Old National Bank acknowledged receipt by a postal card as follows:

"EVANSVILLE, IND., June 18th, 1887.

"I have received your favor of the 16th, with stated enclosure.
"Entered for coll.

"Yours respectfully,      HENRY REIS, Cashier."

No entry was made by it at the time on its ledger account with the Fidelity Bank, but only in its collection register. On June 18 the draft was forwarded to the First National Bank of Terre Haute, received by the latter on June 20, and paid to

it by the Terre Haute Distilling Company on the afternoon of that day between two and three o'clock. On the same afternoon a letter was written by the First National Bank to the Old National Bank, advising the latter of the payment of the draft, and that its amount had been credited to the account of the latter, which letter was posted at about four o'clock of the same afternoon. The letter was received by the Old National Bank at or about eight o'clock on the morning of June 21. During the month of June, 1887, the banking hours of these banks were from nine o'clock in the forenoon continuously until three o'clock in the afternoon, and the letter having been received before banking hours of the 21st, the amount of the draft was, in accordance with its general practice, entered by the Old National Bank in its account with the Fidelity Bank as a credit to the latter as of June 20, 1887.

On June 21, 1887, the Old National Bank wrote and mailed to the Fidelity Bank a letter, notifying the latter of the payment of the draft and the entry to its credit. This letter was received by the persons in charge of the Fidelity Bank on June 22.

"On June 20, 1887, and for ten days prior thereto, the Fidelity Bank was insolvent, but neither the German-American Bank, the Old National Bank, nor the First National Bank had knowledge of this fact, nor did either of said banks have knowledge of such fact until after the failure of the Fidelity Bank, as hereinafter stated. On the morning of June 20, 1887, Mr. Eugene Powell, bank examiner, came to the Fidelity Bank for the purpose of making an examination. He did so, to a certain extent. In the afternoon of June 20, 1887, the board of directors of the Fidelity Bank had a meeting at the office of the bank, which continued in session until after the close of banking hours. After the close of banking hours the board of directors adjourned, and immediately thereafter Mr. Powell, as bank examiner, took possession of the Fidelity Bank, and that night had the combination of the safe changed, of which combination he took possession. The Fidelity Bank kept its doors open for the transaction of bank-

ing business until the close of banking hours on June 20, 1887, and transacted such banking business as offered until that time. The board of directors of the Fidelity Bank met early in the morning of June 21, 1887, and about 8.30 o'clock, half an hour before the beginning of bank hours, it was announced to its officers that the bank would not open. The Fidelity Bank did not open for business on June 21, 1887, and has never opened for business since June 20, 1887.

"Mr. Eugene Powell, bank examiner, continued in possession of the Fidelity Bank, after taking possession of it in the manner aforesaid, until June 27, 1887, when Mr. David Armstrong was appointed receiver, which position he held at the beginning of this suit.

"No remittance of money or any tangible representative of money representing this draft was ever made by the First National Bank to the Old National Bank or by the Old National Bank to the Fidelity Bank or by the Fidelity Bank or its receiver to the German-American Bank, and the proceeds of this draft never passed between said banks, if at all, otherwise than by the debit and credit entries above mentioned.

"Prior to the institution of this suit the Old National Bank and the First National Bank made a mutual settlement of their collection accounts up to and including the above-mentioned entries representing said draft. The mutual collection accounts between the Old National Bank and the Fidelity Bank have not been settled on account of the insolvency of the Fidelity Bank, but the Old National Bank claims upon such settlement the benefit of the amount of said draft as a debit on its account with the Fidelity Bank.

"On the books of the Fidelity Bank, as they stood at the beginning of this suit, the Fidelity Bank owed the German-American National Bank $17,844.77. On the books of the Fidelity Bank and of the Old National Bank, as they stood at the beginning of this suit, the Fidelity Bank owed the Old National Bank $14,391.57. The above balances are made by debiting the Old National Bank with the amount of said draft and crediting the German-American Bank with the like amount."

Upon these facts judgment was entered in favor of the plaintiff for the amount of the draft and interest, to reverse which judgment the defendant brought this writ of error.

*Mr. Alpheus H. Snow,* (with whom was *Mr. John M. Butler* on the brief,) for plaintiff in error.

*Mr. Charles W. Smith,* (with whom were *Mr. Thomas B. Paxton, Mr. John W. Warrington,* and *Mr. John S. Duncan* on the brief,) for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The Fidelity Bank did not purchase this draft from the plaintiff, and, although it acquired the mere legal title, never became its equitable owner. It received it as an agent, and the endorsement, "for collection, for German-American National Bank of Peoria, Illinois," was notice to it and every subsequent holder that it was forwarded simply for collection. Neither by the express terms of the contract between the plaintiff and the Fidelity Bank, nor by the course of business between them, nor by the custom of bankers, did the receipt of the draft by the Fidelity make it a debtor for the amount thereof, neither would it become such debtor until after collection and possession of the proceeds of the draft, either actually or by settlement of accounts between the parties. *Sweeny* v. *Easter,* 1 Wall. 166; *White* v. *National Bank,* 102 U. S. 658; *Commercial Bank* v. *Armstrong,* 148 U. S. 50.

The draft was collected and the proceeds thereof received by the defendant. While it was at first collected by the First National Bank of Terre Haute, yet it was by that bank credited to the defendant, notice of the credit given, and the amount settled between the two banks in the adjustment of their accounts.

The case, therefore, is presented of a receipt of the proceeds of the draft by the defendant, a sub-agent or agent of the collector, and the non-receipt of the proceeds by the plaintiff,

the owner, and the question is whether the former has discharged itself of liability for the moneys which it has thus received.

The contention of the defendant is that it paid the moneys which it received to the party from which it received the draft, to wit, the Fidelity Bank, which was the agent of the owner. It is not pretended that it ever forwarded to the Fidelity Bank the cash therefor, but the claim is that it credited such amount on the account of the Fidelity Bank, the Fidelity being at the time indebted to it, and that this is equivalent to an actual payment of money. The difficulty with this contention is, that, at the time this credit was entered by the defendant, the Fidelity was not in a condition to receive credit or make any settlement; it was insolvent, and in the custody of the officers of the law. The defendant received no notice of the collection by the Terre Haute bank, made no entry on its books, took no other action looking to a settlement with the Fidelity until the morning of the 21st, and it is found not only that the Fidelity had been insolvent for ten days theretofore, but that on the 20th the bank examiner had taken possession — a possession which he maintained until the appointment of the receiver Armstrong. At the time this examiner took possession the business of the bank stopped, and the authority of the directors and officers ceased. They could not thereafter make any settlement with the defendant to the prejudice of the rights of third parties. If on the morning of the 21st the defendant had brought to the Fidelity Bank in cash the amount which it had collected on this draft and tendered it to the officers of the Fidelity Bank in payment of a balance due to such bank, the latter could not have lawfully received that cash for such purpose, so as to relieve the defendant from its liability to the plaintiff. And, *a fortiori*, if it could not accomplish this by an actual tender of the money, it cannot by a mere entry on its own books. The only way in which the defendant could, after receiving the amount of this check, discharge itself from liability to the plaintiff was by a payment to the Fidelity Bank, its endorser, at a time when the Fidelity Bank was authorized

to receive it for the plaintiff, and the authority to so receive it terminated when it stopped business.

There is nothing in the case of the *Commercial Bank of Pennsylvania* v. *Armstrong*, 148 U. S. 50, which conflicts with this. On the contrary, it was said in that opinion, in reference to a transaction similar to the one before us: "The plaintiff, then, as principal, could unquestionably have controlled the paper at any time before its payment, and this control extended to such time as the money was received by its agent, the Fidelity."

Language found later in the opinion, upon which the defendant relies, must be understood in relation to the particular facts of that case. Certain drafts had been received by the Fidelity Bank and forwarded for collection to other banks, and by the latter collected. Of these collections some had been made by banks indebted to the Fidelity, and others by banks to whom the Fidelity was indebted, and the amount of such collections credited on their accounts with the Fidelity. The former were paid by such banks to Armstrong, the receiver of the Fidelity, and after its failure. The suit was one brought by the original owner of these drafts against the receiver, to charge the funds in his hands with a trust in respect to all these collections, and it was adjudged that he was such trustee as to the former, and not as to the latter; the former, because the collection had not been completed by the Fidelity before its failure, and, therefore, the amounts thereof subsequently received by the receiver were received for the benefit of the original holder; whilst, as to the latter, the collection by the Fidelity was complete and the original holder stood simply as a general creditor of the Fidelity for such amounts. There was in respect to these latter collections no question as to the precise time at which the transaction between the Fidelity and the collecting banks was completed, and no suggestion that an entry on the books of the Fidelity, or some other act indicating its assent to the action of the collecting banks in crediting the amount, was necessary to complete the settlement. On the contrary, it was assumed that the settlement between

the Fidelity and its agents was complete at the time of the failure.

It is unnecessary, in this case, to consider what would be the rights of the parties if a settlement between the defendant and the Fidelity Bank had been consummated while the latter was actually engaged in business, although in fact insolvent; for, as stated, no action was taken by the defendant until after the Fidelity had stopped business, and was in possession of the officers of the law. The mere fact that news of the condition of the Fidelity had not reached the defendant at the time it made this entry is immaterial. The condition of insolvency was "disclosed" because it was known to the officers of the law, and action had been taken by them in consequence thereof, and that is all that is necessary. We think the conclusions of the Circuit Court were correct, and its judgment is

*Affirmed.*