KANE et al. v. FIRST NAT. BANK OF EL PASO, TEX., et al.

No. 6258.

Circuit Court of Appeals, Fifth Circuit.

March 3, 1932.

Rehearing Denied April 1, 1932.

ing contractor having among other contracts one with Alpine independent school district to build a school building, for the performance of which Maryland Casualty Company was surety. On May 15, 1929, the bankrupt indorsed and deposited with the bank a check for $10,000 drawn to its order by Alpine independent school district, it being, as the bank knew, a partial payment on the contract. On May 18, 1929, the bankrupt indorsed and deposited with the bank a check for $18,436.80, drawn to its order by Argonaut Realty Company. Each check was on an out-of-town bank, and was received under a special agreement for collection, but entered as a credit on bankrupt's account; and was indorsed by the bank and sent to a correspondent. On May 21, 1929, the day preceding actual collection of the checks, the bankrupt advised the bank of its inability to continue in business, whereupon the bank credited the entire balance of the bankrupt's checking account which, assuming the collection of these checks, was an amount of $24,291.10, upon notes which the bank held against the bankrupt due May 31st and June 2, 1929, aggregating $50,000. The checks, totaling $28,436.80, were actually collected May 22d, and the money kept by the bank. The difference of $4,145.70 covered checks of the bankrupt paid by the bank between May 15th and May 21st which would have been an overdraft, but for these deposits and collections. Kane as trustee sued at law to recover the $24,291.10 as a voidable preference. Maryland Casualty Company intervened as permitted by Texas practice, and sought a judgment against the bank for the $10,000 arising from the Alpine check. All parties moved for an instructed verdict, and the court gave judgment for the bank. Kane, trustee, and Maryland Casualty Company appeal.

We are not advised of any statute which requires that payments duly made to a contractor for public work be handled by him in any special way, or be given any particular application. No such contractual obligation appears in this case. In the absence of statute or stipulation otherwise the general responsibility of the contractor is credited in contracting with him, and his general resources are drawn on by him in executing the contract. Money or checks paid to him as the work progresses are the property of the contractor unincumbered by any trust, just as are payments to others for goods manufactured or services performed. The contractor's banker may receive such checks and is not bound to see to their appli-

Joseph M. Nealon, Joseph McGill, M. Nagle, and Maury Kemp, all of El Paso, Tex., for appellants.

A. H. Culwell and Allen R. Grambling, both of El Paso, Tex., for appellees.

Before BRYAN, FOSTER and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

H. O. Kane is the trustee in bankruptcy of Ware-Ramey Company, appointed on a petition filed August 3, 1929. First National Bank, of El Paso, Tex., was the bankrupt's banker. The bankrupt was a build-

cation, nor to ascertain the state of the contractor's account with each contract; nor, if he knows it, need he govern himself in any wise with reference thereto. No wrong is done to the contractor's surety in recognizing the contractor's full title to such checks by taking them on deposit with all the consequences ordinarily attaching to such deposit. The cases supposed to establish a trust in favor of the surety are based on Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. That case did not involve a payment made to the contractor, but involved the reserve kept back by the United States to secure the final performance of the contract for which the surety on the bond had also bound himself. The surety having had to complete the contract claimed this reserve, which was still in the hands of the United States. The Prairie State Bank had only an invalid assignment of it. It was decided that this reserve was a security stipulated in the contract to be held by the creditor for the performance of the obligation, to which the surety became subrogated on performing the obligation just as he would be subrogated to any other security. The case has no application to money not reserved as a security but paid over to the contractor. This reserve was also involved in Henningsen v. United States F. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, and Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321. In London & Lancashire Indemnity Co. v. Endres (C. C. A.) 290 F. 98, the surety performed the contract and sued to enjoin the payment of the reserve to the contractor, who, pending the suit, went into bankruptcy. The judgment for the surety was in accord with the Prairie Bank Case. In Cox v. New England Equitable Insurance Co. (C. C. A.) 247 F. 955, the reserve was involved, but had been paid over to the contractor by mistake while claims were outstanding which the surety paid. The contractor had paid it to his bank, but it was held a preference and the bank lost it to the trustee in bankruptcy. As against the trustee it was held that the surety had the better right. None of these cases extends the surety's rights beyond the reserve. In Columbia Digger Co. v. Sparks (C. C. A.) 227 F. 780, a payment to the contractor was involved. The contractor had paid it over to a materialman to whom he owed a debt for the job and also an old debt. The materialman applied the payment to the old debt and sought to hold the surety for the new one. It was

held that as against the surety he must apply the money to the new debt. The decision was on the law of application of payments and does not establish any general trust in the surety's favor by virtue of which he could take the money away from the recipient of it. We think the Maryland Casualty Company has no right to a judgment against the bank.

The trustee contends that the bank in applying to the old notes $24,291.10 which arose from collecting the checks obtained a preference, and that, having at that time reasonable cause to believe such preference would result, the transfer is voidable under Bankruptcy Act, § 60, 11 USCA § 96. The bank contends that it came to owe the bankrupt for the checks in the usual course of business and then exercised its right to offset mutual demands preserved to it even after bankruptcy by Bankruptcy Act, § 68, 11 USCA § 108; and that in addition the checks were held for collection under a banker's lien and by virtue of that lien the proceeds might be applied after knowledge of the customer's insolvency. That a bank may thus set off its liability for deposits even when they were received after the bank knew of the depositor's insolvency was held in New York County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; but the deposits there received stood subject to check for several days and until bankruptcy occurred. In that interval one check was paid, and the court pointed out that there was nothing to show that checks for the entire amount would not have been honored. The case is put upon the ground that by the deposit the bankrupt's estate lost nothing in that the bank's obligation to pay the depositor's checks was substituted in equal amount for what the bank got; that there was then no purpose to obtain a preference by set-off; and the set-off subsequently made was expressly permitted by the Bankruptcy Act. This ruling was followed in Studley v. Boylston Nat. Bank, 229 U. S. 523, 33 S. Ct. 806, 808, 57 L. Ed. 1313, emphasis being laid on the fact that "the deposits were honestly made, in due course of business, and without an intent to prefer the bank." The application of the deposit account to the old notes was made two months before bankruptcy, but was only partial, a substantial account remaining subject to check. These cases indicate that, while the offset is allowed by the Act, if at the time the deposits are received there is not an intent in good faith to increase the checking account but to arrange for an offset, there is in truth not a

deposit but a payment which is a preference. Mechanics' & Metals' National Bank v. Ernst, 231 U. S. 60, 34 S. Ct. 22, 58 L. Ed. 121. On this distinction a set-off of the whole of a deposit account which had been accumulated in the usual course of business has been upheld, but a set-off of subsequent deposits which were received by the bank with the purpose of so applying them and which were immediately so applied was held to be a voidable preference. Rupp v. Commerce Guardian Trust & Savings Co. (C. C. A.) 32 F. (2d) 234; Elliotte v. American Savings Bank & Trust Co. (C. C. A.) 18 F.(2d) 460. We think that a deposit, though made by an insolvent, if in due course of business and really and in good faith intended at the time by the bank to create an equivalent liability to honor the checks of the depositor, is not a present depletion of the depositor's estate, but is a valid banking transaction which may be set off thereafter; but if the bank in accepting the deposit does not intend to become liable to the depositor, but intends to get payment by set-off, the advantage obtained is rendered voidable by a bankruptcy within four months.

The difficulty in applying the principle to the present case lies in determining when the deposit shall be considered as effected. For the evidence makes it plain that on May 15th and May 18th, when the checks were left with the bank, the bank did not believe the depositor to be insolvent and was not trying to collect the notes, which were not due, but accepted the checks in the usual course of business; but on May 21st, the day before the checks were collected, it did know of the insolvency, did determine to collect the notes, and did make book entries indicating an intent to apply the proceeds of the checks to the notes. Each check which was payable in a distant city was tendered and accepted on a deposit slip which stipulated: "Instruments deposited for credit or collection are taken at depositor's risk until final actual payment is received, and it is expressly understood and agreed that in accepting each and every item this bank acts as the agent of the depositor with full power to appoint sub-agents and any bank or person or company appointed shall be held the agent of the depositor and this bank shall be held liable for nothing except its own defalcations." The bank further, as was its custom with large out-of-town checks, told the customer not to check against the deposit till notified of final collection, and directed its clerks not to honor any large checks until then. The entries of credit on the ac-

count were therefore mere memorandums until substantiated by collection, and were so understood by both bank and depositor. The contract was one for collection and credit: that is to say, the bank, though taking legal title to the checks by indorsement, was only an agent for the depositor, who remained the owner until by actual collection the bank became liable to the depositor as for a general deposit, the proceeds becoming at the same moment the property of the bank. 3 R. C. L., Banks, §§ 261, 262; Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363; Evansville Bank v. German-American Bank, 155 U. S. 562, 15 S. Ct. 221, 39 L. Ed. 259.

Collection not having been made on May 21st, the bank was not yet the debtor of the depositor. Although a number of small checks had been honored, creating an overdraft, the parties had made no new agreement about the bank's relation to these checks. Indeed, in the conversation in which the depositor told of his embarrassment, the bank refused to let any checks be drawn to cover certain obligations of the depositor on which relatives were liable. The ex parte book entries made on May 21st had no effect except to declare what the bank intended to do when it should collect the checks. There were thus no mutual debts to be set off on May 21st. We therefore face the question whether a bank having checks for collection and credit, on learning of the customer's insolvency, may collect and retain the proceeds as against a bankruptcy within four months. The question was affirmatively answered in 1873, In re Farnsworth, 8 Fed. Cas. page 1056, No. 4673, the right being put upon the banker's lien. There the drafts were collected after the bankruptcy. The banker's lien extends not alone to the application of moneys and cash balances, but to the retention and collection of commercial paper and securities which have come into the banker's hands in the ordinary course of business and with no agreement to the contrary. 7 C. J., Banks, § 285; 3 R. C. L., Banks, §§ 213, 215; Bank of the Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115; Joyce v. Auten, 179 U. S. at page 597, 21 S. Ct. 227, 45 L. Ed. 332. It arises as a matter of course unless rebutted. Reynes v. Dumont, 130 U. S. at page 391, 9 S. Ct. 486, 32 L. Ed. 934. In Davis v. Bowsher, 5 Term 488, it is said: "The rule is that no person can take paper securities out of the hands of his banker without paying him his general balance unless such securities were delivered to him under a particular agree-

ment which enables him so to do." The lien of course survives the customer's insolvency. Joyce v. Auten, supra. Such a lien the appellee bank had on the checks in its hands for collection, for there is nothing in the deposit agreement which negatives it. We do not think the sending of the checks to correspondents for whose diligence and fidelity the bank was agreed not to be responsible waived the lien. The agreement was but a statement of the Massachusetts rule of liability in respect of out-of-town checks taken for collection, Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; which rule is of force in Texas without a special agreement. Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302. The banker, though he acts under the Massachusetts rule of liability, does not waive his lien by proceeding to collect in the usual way. Although technically the collecting bank is the agent of the depositor, they are actually unknown to one another. The forwarding bank has practical control of the collection, is expected to receive the proceeds, and ordinarily does receive them. Should the forwarding bank become insolvent, the depositor may interfere and assert his ownership, for by insolvency the forwarding bank has become in law disqualified to receive the collection as a deposit. Evansville Bank v. German-American Bank, 155 U. S. at page 563, 15 S. Ct. 221, 39 L. Ed. 259. But this is true both under the New York and Massachusetts rule. The right of the appellee on May 21st to hold the checks as against the depositor by virtue of its lien we affirm.

▄▄ It is thereupon urged that by reason of Bankruptcy Act § 67d, 11 USCA, § 107 (d), as amended June 25, 1910, which preserves liens given or accepted in good faith, and not in contemplation of or in fraud of bankruptcy, and for a present consideration, "to the extent of such present consideration only," this banker's lien can be upheld only to the extent of the overdraft permitted on the faith of it, a validity conceded to it by suing only for the surplus of the collection. We need not decide whether a banker's lien is among those contemplated by the section nor whether the consideration for the lien is not broader than that suggested, because the section relates to liens asserted in a bankruptcy proceeding. In the case at bar the bankruptcy did not happen until the lien had ripened into something else. Without any new act or transaction between the depositor and the bank, but by the natural and legal fruition of the contracts of deposit from which neither party could have withdrawn without the consent of the other, collection was made and ipso facto the amount went to the credit of the depositor, and the bank became a debtor by general deposit. The result takes its character as preferential or not from the intention with which the contracts were made that produced it. The lien is of importance only to show that the collection could not have been withdrawn by the depositor in the meanwhile. Thereafter the bank was within its rights in closing the account and refusing to permit further checking on it.

▄▄ A banker has ordinarily no right to apply the deposit account to a note not yet due because it is contrary to his obligation to honor checks, but in case of supervening insolvency by the weight of authority that right arises. American Bank & Trust Co. v. Morris (C. C. A.) 16 F.(2d) 845; 7 C. J., Banks, § 353; 3 R. C. L., Banks, § 220. These notes in fact fell due within a few days, so that in any event there was long before the bankruptcy a clear right of set-off. The contracts for collection and credit thus having been made in due course of business and without any expectation by the bank of creating a preference, and having without a further transaction between the parties ripened into a valid though brief obligation from the bank to the bankrupt, so that mutual demands arose before bankruptcy, the trustee cannot object to the set-off expressly authorized by the Bankruptcy Act.

Judgment affirmed.