### GOLDSTEIN v. FRANKLIN SQUARE NAT. BANK.

### In re FRANKLIN SQUARE DEPARTMENT STORE.

### No. 79.

District Court, E. D. New York.
Jan. 30, 1940.

For opinion of Circuit Court of Appeals, see 107 F.2d 393.

Nathan B. Fogelson, of New York City, for plaintiff.

Alexander Zager, of Jamaica, L. I., N. Y. (Hyman Stein, of New York City, and Saul L. Harris, of Brooklyn, N. Y., of counsel), for defendant.

BYERS, District Judge.

The judgment of this court rendered March 27, 1939, 26 F.Supp. 890, has been reversed for error in that there was a failure to decide and make appropriate findings on the essential issues "whether the bank in receiving the deposits made between December 15th and December 27th (1937) intended to apply them in payment or set-off on the notes held by it, whether the bankrupt was then insolvent, whether the bank knew or had reasonable cause to believe that the bankrupt was insolvent".

The cause was remanded with direction to this court to make findings and conclusions on the issues presented and to enter judgment appropriate thereto.

The opinion for reversal contains also the following: "We say nothing as to what the findings and conclusions on the issues should be. A new trial is not called for, the proof having been fully developed."

The record has been re-examined, and both counsel have submitted briefs, and have also supplied the court with their briefs on appeal from the original judgment.

It is not disputed that the bankrupt was insolvent on December 1, 1937, and that condition persisted until January 26, 1938, when a debtor petition was filed which resulted in adjudication on June 7, 1938.

So much of the essential issues requires no discussion.

As to the other issues, the plaintiff's brief urges:

(a) That the bank had knowledge or reasonable cause to believe that insolvency existed during the period which embraced the receipt of the deposits, because both loans (there were two, of $500.00) "were so regulated as to become due within the period of five days and each was a short term loan; the logical inference being that the bankrupt was to clean up these obligations before the end of the year".

(b) "The condition of the account on and after December 10th gave the bank direct notice of the bankrupt's cash deficiency."

The borrowings represented by the two notes were described in the opinion of this court and would not be here repeated, except for the argument first above quoted. The facts as to the loans were:

The bank had loaned $500.00 to the bankrupt on his note dated October 16, 1937, which was due on November 15, 1937. That was the state of affairs on November 1, 1937, when he borrowed an additional $500.00 on a note payable December 31, 1937.

On November 15, 1937, he paid the said note which was due on that day.

On November 17th he sought a new loan of $500.00 and was told that, if he would accelerate the loan granted on November 1st so that it would become due on December 15th instead of December 31st, the desired new loan would be granted, to become due on December 20, 1937, and this was done.

The only evidence respecting these matters is that of Clayton, the assistant cashier of the bank, and his testimony will be read in vain for any indication that these two loans were "regulated", the one on November 1st and the other on November 17th, with relation to the solvency or insolvency of the bankrupt. That they were to become due before the end of the year is not a matter of inference, but of direct proof.

The negotiation of those loans, as has been said, was in accordance with the practice of the parties since April 1, 1935, from which time forward the bankrupt was accustomed to borrowing "$1000.00 occasionally $1500.00".

So much of the plaintiff's argument carries no persuasion as to the intention to be attributed to the bank in receiving the deposits between the dates named in the opinion for reversal.

As to them the evidence shows:

| 1937 | Opening | Deposits | Checks, etc. paid | | Close |
|---|---|---|---|---|---|
| Dec. 15 | $106.23 overdraft | $200.00 | $25.00 | | |
| | | | 29.94 | | |
| | | | 4.00 | $58.94 | $34.83 bal. |
| Dec. 16 | 34.83 balance | 124.00 | .50 | | |
| | | | 8.25 | | |
| | | | 8.42 | | |
| | | | 31.93 | 49.10 | 109.73 " |
| Dec. 17 | (No transactions.) | | | | |
| Dec. 18 | 109.73 balance | 350.68 | 10.50 | 10.50 | 449.91 " |
| Dec. 19 | (Sunday) | | | | |
| Dec. 20 | 449.91 " | 188.37 | *501.00 | 501.00 | 137.28 " |
| Dec. 21 | 137.28 " | 110.00 | 170.00 | | |
| | | | 25.00 | 195.00 | 52.28 " |
| Dec. 22 | 52.28 " | 188.00 | .50 | | |
| | | | 29.22 | | |
| | | | 12.00 | | |
| | | | 54.79 | | |
| | | | 12.25 | | |
| | | | 10.00 | 118.76 | 121.52 " |
| Dec. 23 | (No transactions.) | | | | |
| Dec. 24 | 121.52 balance | 396.99 | 57.50 | | |
| | | | 100.00 | | |
| | | | 85.00 | 242.50 | 276.01 " |
| Dec. 25 | (Holiday) | | | | |
| Dec. 26 | (Sunday) | | | | |
| Dec. 27 | 276.01 " | 600.65 | *502.13 | | |
| | | | 54.00 | | |
| | | | 199.62 | | |
| | | | 7.86 | 763.61 | 113.05 " |

*The notes in question.

A summary of the foregoing establishes that during the thirteen days in question the bankrupt made eight deposits, distributed among all but two business days, amounting in all to...................................... $2158.69

There were presented to and paid by the bank twenty checks, concerning which there is nothing to indicate that they were not issued and paid in due course, on all but two business days.............. $935.28

Also there were two items of protest @ .50..................... 1.00    936.28

The difference between the deposits and drafts was.................... 1222.41

The amounts offset by the bank to pay the two notes on December 20th and 27th, respectively ($501.00 and $502.13) were......................... 1003.13

   219.28

There was an overdraft at opening December 15, 1937, of............... 106.23

Balance at close December 27, 1937.................................. $ 113.05

During this period there is but one transaction which could possibly lend color to the theory that deposits were received, not with the intention that a balance would be created in favor of the depositor, subject to his withdrawal at will (Bank of Commerce & Trusts v. Hatcher, 4 Cir., 50 F.2d 719, 85 A.L.R. 359), but for the purpose of accumulating a sum solely to enable the bank to repay itself, and that is the check for $300.00 to the order of Cohen and Livingston, dated December 20, 1937, deposited December 23rd and returned on some date thereafter (probably December 27th; see Defendant's Exhibit D) with the notation "Payment Stopped".

It would have been possible for the bank to have induced its depositor to stop payment on that check so as to relieve the bank of meeting it, but there is no support in the record for such an assertion.

The check seems not to have been represented, although the account continued in active operation until January 28, 1938.

The bankrupt was not called to testify as to this or any other aspect of his relations to the bank, and the witness called for the payee of the check did not depose anything on the subject.

Four later deposits during December were accepted by the bank and nine during the ensuing month, which is consistent with Clayton's testimony that he knew nothing of the solvency or insolvency of the depositor, and that his first knowledge of bankruptcy was gained from the newspapers.

At most, the stop-payment action by the bankrupt could not cast any light upon the receipt of deposits prior to December 21st, which would exclude the handling of the first note from any criticism in reference thereto, since the check was dated on December 20th and payment could not have been stopped until after it was issued, unless indeed the issuance was agreed in advance to be a mere form. If that were the fact, some such evidence from the bankrupt ought to have been adduced.

The plaintiff also relies upon the refusal of the bank to pay the $500.00 check of Blechman which was presented on December 27th which was the same day on which the bank took $502.13 to pay the note which had been held by it as overdue, since the 20th.

The reasoning apparently is that the bank had been accumulating deposits for its own purposes, and not to meet the bankrupt's checks, and did not propose to forfeit its objective in favor of Blechman.

The contention is met by the facts above set forth: Beginning December 21st and including the 27th, deposits in the sum of $1295.64 were received, and beginning on the former date and continuing through the 24th (the last business day prior to the 27th) the bank paid out ten checks, to sundry payees, in the sum of $556.26, and on the 27th it paid three similar items totaling $261.48, or $817.74 in all.

The result of this showing is thought to negative the plaintiff's argument, so far as the Blechman check is concerned.

As a matter of fact, that check was paid on December 28th, in part as the result of a new loan made by the bank on that day, which the bankrupt paid on January 4, 1938.

The plaintiff argues that the condition of the bank account from and after December 10th gave the bank notice of a cash deficiency on the part of the bankrupt, thus: At the close of the 10th the account was overdrawn $241.20, on the 11th $131.49, on the 13th $66.02, and on the 14th $106.23.

As to this, the record contains the following testimony of Clayton:

"Q. Do you know if at any time during the four years that Mr. Finkelstein did business with the bank there was any overdraft in the course of the four years?"

(Objection, which was withdrawn.)

"A. Yes. Quite often he had overdrafts in his account."

Despite this history, which must be deemed true in the absence of contradiction, the plaintiff argues that the cash shortage which continued from December 10th to 14th, inclusive, was sufficient to put the bank upon inquiry as to the solvency of its depositor, and that, if such inquiry had been made, insolvency would have been discovered, and thus the transactions under examination must be viewed as creating a preference under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96.

There is nothing in the evidence to indicate how critical an examination of the bankrupt's books and records including merchandise inventory would have been required to establish the disparity between his assets and liabilities.

The cases cited in the opinion for reversal are the following:

Elliotte v. American Savings Bank, 6 Cir., 18 F.2d 460.

Here the bank created an overdraft of $2400.79, largely in excess of any previous one, by paying itself a $3000.00 demand note which it had exacted in renewing a prior time loan, on December 24, 1924; the court describes that transaction as a confiscation of the balance of $600.00 then in the account, and of the immediately ensuing deposits equaling the amount of the overdraft, which was bound to put an end to the bankrupt's business. The petition was filed seven days later. It was decided that the deposits so applied were not received by the bank in due course, and decree went against the bank for the amount thereof.

There is no such showing in this case.

Kane v. First National Bank of El Paso, Tex., 5 Cir., 56 F.2d 534, 85 A.L.R. 362.

A trustee in bankruptcy sought to recover as a preference $24,291.10, being the proceeds of checks received for collection from the bankrupt on May 15th and 18th, respectively, of 1929, which were applied on May 22nd, when actual collection was made, against notes of the bankrupt due May 31st and June 2nd, the bank having notice on May 21st from its depositor of inability to continue in business, which seems to have been treated as notice of insolvency. 56 F.2d at page 537, 85 A.L.R. 362.

A judgment for defendant was affirmed because the evidence did not disclose anything but receipt of the deposits in due course; that is, there was a dearth of showing that the bank received the deposits initially not intending to become a debtor to the depositor as to them, but intending to get payment by set-off of its notes.

Plymouth County Trust Co. v. MacDonald, 1 Cir., 60 F.2d 94.

Action by trustee in bankruptcy to recover as a preference several deposits, namely: $4,027.29 on hand July 12, 1929, and $15,100.78 collected July 12th, and $1,348.72 of the balance then in the bankrupt's account.

Of these, recovery of the first was refused, because under the proof the deposits so represented had been received in due course, and not for the purpose of set-off against a demand note which had been substituted for time loans, in March of 1927.

In June, 1929, a stockholders' meeting of the bankrupt had been called, which was attended by the president of the bank, at which it was decided "to allow the corporation to continue business for three months longer".

On July 12, 1929, the main office learned of a deposit of $15,100.78 in a branch of the bank, which came on that day to the main office, when the $4,027.29 was applied to the "frozen loan", and the first named items were sent by registered mail to New York for collection, with instructions to wire the defendant if those checks were honored. Such word was received on the 13th, and thereupon the proceeds of those checks were applied to the demand loan, and on July 15th similar treatment was accorded to the balance then in the bank account of $1,348.72 (as to that $1,007.71 was the subject of recovery—page 96).

The court finds that the bank decided on July 12th to accept no more deposits for the purpose of honoring checks—save those for payroll and therefore entitled to priority in bankruptcy—and to collect as much as possible of its loan, "knowing that this action would close down the business of the corporation and precipitate an assignment or bankruptcy".

The instant case presents no such picture.

Citizens' National Bank of Gastonia, N. C. v. Lineberger, 4 Cir., 45 F.2d 522.

This case, for present purposes, involves the application on March 14, 1927, of $600.00 of a bank balance of $611.25 on account of a note due the defendant bank on March 10th.

There had been a conference of the heads of the bankrupt on March 12th, which was attended by the president of the bank, pursuant to which a letter was authorized to be sent to creditors offering them a 25% settlement, although figures presented to the meeting did not disclose insolvency.

The company continued in business until April 1st, during which time deposits were received, and twenty-seven checks aggregating $1,381.76 were paid by the bank, and apparently there was a balance of $3,486.32 left.

The court finds that the $600.00 was deposited in regular course and no reason appeared during the receipt thereof to cause the bank to question the depositor's solvency.

One of the heads of the bankrupt was a brother-in-law of the president of the bank, who thus was in a position, it may be supposed, to inform himself concerning the bankrupt's true affairs.

The case contains many quotations and citations, and is a favorable authority to the defendant here.

The status of a deposit as a so-called transfer is particularly illuminated.

Matters v. Manufacturers' Trust Co., 2 Cir., 54 F.2d 1010.

This case has to do with preferences under Section 15 of the Stock Corporation Law of New York, Consol.Laws, c. 59, and the opinion discusses the evidence from the standpoint of the depositor's intention. The terms of the New York statute in 1927 and its amendment in 1929 are given consideration. The bearing of this case on Section 60 or Section 68 of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 108, is not presently understood.

Stevens v. Bank of Manhattan Trust Co., 2 Cir., 66 F.2d 502.

Trustees of bankrupt sought to recover as a preference $48,877.74 applied on April 24, 1930, two days before the filing of an involuntary petition.

On April 15th, representatives of banks holding paper met and, among other things, ordered the making of an audit, which began on the 18th and was completed on the 24th, when insolvency was revealed, and the set-off applied.

Many deposits were received and checks paid in due course, between April 15th and 24th, and a decree of the District Court in favor of the defendant was affirmed because the finding below that the "deposits were not made with a view to their use as a set-off cannot be reversed by us".

In view of the state of facts presented by this record, and in consideration of the cases cited and others, such as Mechanics' & Metals National Bank v. Ernst, 231 U.S. 60, 34 S.Ct. 22, 58 L.Ed. 121, it is found that the defendant, in receiving the deposits made between December 15th and December 27th, 1937, is not shown to have intended to apply them in payment or set-off against the notes held by it, but is shown to have received them and handled them in due course; and that the defendant is not shown to have known or had reasonable cause to believe that the bankrupt was insolvent on those days; nor did it so learn until thereafter, although insolvency did in fact exist.

It is concluded therefore that there must be a decree for the defendant, to be settled on notice. If the findings and conclusion embodied herein are deemed to be inadequate, additional findings may be presented for settlement with the decree.