**ROSENBAUM v. CENTURY INDEMNITY CO.**

**In re ULTIMITE CORPORATION.**

No. 277, Docket 20996.

Circuit Court of Appeals, Second Circuit.

July 7, 1948.

Chauncey H. Levy, of New York City (Sydney Basil Levy, of New York City, of counsel), for trustee-appellant.

Reuben E. Gross, of Staten Island, N. Y., for Grays Ferry Brick Co., appellant.

Samuel Gottesman, of New York City, for Century Indemnity Co., appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from an order of the District Court affirming two orders of a referee in bankruptcy, the first granting a motion of the Century Indemnity Company for an order directing the appellant Rosenbaum, trustee in bankruptcy of Ultimite Corporation, to pay over $3,762.22 out of a sum of $4,119.23 to the Indemnity Company, and the second granting a reargument but ordering the prior ruling to stand. The total of $4,119.23 represented the balance due the bankrupt under a contract of the latter with the United States of America dated December 20, 1941, for the construction of a concrete tower with steel frame building at Scituate, Massachusetts.

On December 30, 1941, the Indemnity Company, as surety, executed and delivered its bond guaranteeing payment to all persons supplying labor or material in the prosecution of the work provided for in the contract, as required by the Miller Act, 40 U.S.C.A. § 270a. Ultimite Corporation completed its contract but failed to pay some of the claims for labor and material supplied for the work. On July 6, 1942, the United States paid the final amount of $4,152.50 due under the contract to the Jamaica National Bank which after deducting a charge of $33.27 left a balance of $4,119.23 on deposit to the account of Ultimite. On July 11th Grays Ferry Brick Company recovered a judgment against Ultimite for $5,497.33 for materials furnished the latter, but not supplied for or used in the prosecution of the above contract. On July 14th Grays served on the

Jamaica National Bank a third party order in supplementary proceedings under the above judgment. An involuntary petition in bankruptcy was filed against Ultimite on July 21st, and it is stipulated that it was insolvent within the meaning of the Bankruptcy Act on that date. On August 5th a court order was made directing the bank to pay over to the receiver of Ultimite the amount of $4,119.23, subject to any lien which Grays might have, the surety not being a party and having no knowledge of the proceedings until after the making of the order. The bank paid this amount the following day, which was thereafter deposited in the receiver's account and now forms part of the balance in the estate account. Ultimite was on the same day adjudicated a bankrupt and thereafter a trustee was appointed. Five creditors filed claims totalling $258.14 for labor or materials supplied to Ultimite for the work under this government contract. Thereafter, between October 22, 1942, and August 10, 1943, the surety company paid a total of $3,762.22 to other creditors who supplied labor and materials for the work in accordance with the obligation under its bond and received from them assignments of their claims against the bankrupt.

The referee held that the surety had a valid equitable lien on the final payment of the government under the contract that was deposited in the bank, which was not superseded by any liens of Grays or the trustee and, therefore, ordered the trustee to pay the surety the full amount claimed. He also ordered payment in full of the five creditors who had made proofs of claims on their own account, but were not parties to this controversy, subject to the trustee's right to challenge the validity and amount of their claims. With regard to the validity of Grays' claim and the respective rights of Grays and the trustee in the small balance of the contract payment remaining after satisfaction of the claims of the surety company and the five creditors, the referee reserved these matters for future disposition.

In our opinion the referee and the District Court which affirmed his orders were in error in holding that any equitable lien possessed by the surety company was paramount to the legal liens of Grays or the trustee under the New York law which must determine the relative rights of the parties. See Collier on Bankruptcy, 14th Ed., § 70.62. Section 70, sub. c of the Bankruptcy Act confers upon a trustee the rights of a creditor holding a lien or a judgment-creditor holding an execution returned unsatisfied, as of the date of bankruptcy. 11 U.S.C. § 110, sub. c. Any rights which the surety company had were based upon an equitable lien. Such rights by the New York law are deferred to legal liens obtained upon the property by judgment-creditors and trustees in bankruptcy. The following decisions interpreting New York law in respect to the rights of pledgees and of mortgagees of after-acquired property subordinate such rights to those of attaching and execution creditors and trustees in bankruptcy. Titusville Iron Co. v. New York, 207 N.Y. 203, 100 N.E. 806; Zartman v. First Nat. Bank, 189 N.Y. 267, 82 N.E. 127, 12 L.R.A.,N.S., 1083; Rochester Distilling Co. v. Rasey, 142 N.Y. 570, 37 N.E. 632, 40 Am.St.Rep. 635; Irving Trust Co. v. Commercial Factors Corporation, 2 Cir., 68 F.2d 864; Corney v. Saltzman, 2 Cir., 22 F.2d 268. The same doctrine has been applied by the New York courts in dealing with assignments of refunds to become due upon surrendering liquor licenses, where the rights of the assignees have been deferred. Alchar Realty Corporation v. Meredith Restaurant, 256 App.Div. 853, 8 N.Y.S.2d 733; Multer v. New York, 178 Misc. 360, 34 N.Y.S.2d 275. In the case at bar any right acquired by the surety in sums to be paid under the contract or in reserved percentages is confessedly a creature of equity, based upon an express or implied agreement or arising from the mere relation of the parties. We cannot see how such a right differs from the equitable liens dealt with in the above decisions. The decisions relied on by the referee were not cases where the rights of the parties were determined by New York law and therefore are not controlling here.

In respect to whether the surety acquired any equitable lien by its payment of debts under the contract, it is questionable whether under the decisions any lien that might exist would extend to any amounts other

919

than the reserved percentage which was apparently much smaller than the claim of the surety. See Third Nat. Bank v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548; Kane v. First Nat. Bank of El Paso, Texas, 5 Cir., 56 F.2d 534 (C.C.A.5), 85 A.L.R. 362. But we do not feel it necessary to determine this question for the reason that if any equitable lien were held to have arisen, it would be subordinate to the rights of judgment-creditors and trustees in bankruptcy as we have heretofore explained.

It is clear from what has been said that the surety has acquired no rights paramount to the lien of the trustee in bankruptcy or to any valid lien of the judgment-creditor Grays.

The order of the District Court is reversed and the case remanded with directions to proceed in accordance with the views expressed in this opinion.