## TRINITY UNIVERSAL INS. CO. v. FIRST STATE BANK OF LIBERTY.

### No. 5594.

Court of Civil Appeals of Texas. Amarillo.

Feb. 28, 1944.

Rehearing Denied April 3, 1944.

Wood, Gresham, McCorquodale & Martin, of Houston, for appellant.

E. B. Pickett, Jr., of Liberty, for appellee.

PITTS, Chief Justice.

This suit involves the conflicting claims of appellant, Trinity Universal Insurance Company, and appellee, First State Bank of Liberty, Texas, to certain funds that came into the possession of appellee through a check deposited in the said bank. Appellant was surety upon the performance and payment bonds given to the United States Goverment by Foley & Maugh Construction Company, hereafter referred to as "contractor," who had a contract with the Government to build a post office at Liberty, Texas, at a total contract price of $44,400. · The said contractor defaulted and appellant paid certain bills for labor and material in the net sum of $6,983.51, which had been incurred by the contractor, and completed the construction of the building. Appellee had received the check in question from the Government, which was authorized by a power of attorney executed by the contractor, to send the check as a monthly estimate on the construction job to appellee with whom the contractor had an agreement as a general depositor. Appellee deposited the check, applying a part of it to extinguish a debt the contractor owed appellee, and the remainder to the credit of the contractor. Appellant claimed the full amount of the check by virtue of an assignment executed to it by the contractor. Appellee claimed it acted in accordance with the law governing the relationship of a bank and its depositor and that it had the lawful right to extinguish its debt owed by the contractor with a part of the check and to deposit the remainder to the credit of the said contractor.

Appellant filed suit on October 19, 1940, against appellee for the sum of $6,983.51, the net loss sustained by it. The case was tried before the trial court without a jury and a judgment was rendered on October 28, 1942, for appellee, from which judgment appellant perfected its appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this court by the Supreme Court of Texas.

The trial court filed his findings of fact and conclusions of law at the request of appellant, which is claiming in this court only $4,180, the full amount of the check in question.

There was little, if any, controversy about the facts in the case. Appellant did not except to the findings of fact by the trial court and they seem to be supported by the evidence.

The record discloses that on October 10, 1938, the contractor made application to appellant for bonds of suretyship to guarantee the performance of the contract entered into between the contractor and the Government on September 28, 1938, and, among other statements and commitments made in the said application, the contractor made the following commitment to appellant: "To secure the company against loss for which the undersigned is or hereafter may be primarily liable and·to secure payment of all claims of said surety against the undersigned, we, the undersigned, do hereby convey and assign unto the said company any and all payments, funds, money or property due or to become due to the undersigned as provided in said contract, and also all of our rights in and to all sub-contracts which may have been or may hereafter be entered into, and the materials embraced therein, and also all our rights, claims and demands against any surety or sureties on bonds furnished by sub-contracts. We, the undersigned, do hereby nominate and appoint the president or any secretary of the company our true and lawful attorney with full right and authority to sign the name of the undersigned to any voucher, check, release, bill of sale of such equipment and/or materials or any part thereof, satisfaction or paper necessary or desired to carry into effect the purposes of this assignment, hereby ratifying and confirming all that our said attorney may lawfully do in the premises."

The record further discloses that appellant executed for the contractor two surety bonds guaranteeing performance and payment as provided in the contract between the Government and the contractor; that the contract further provided that partial payments would be made by the Govern-

ment to the contractor as the work progressed at the end of each month on estimates approved by the Government with ten per cent of each estimate retained by the Government until final completion of the contract, and provided further that the contractor should pay all approved accounts weekly to mechanics and laborers on the job. The record further discloses that several weeks after the construction began the contractor opened up an account as a general depositor with appellee and made an agreement with appellee for the advancement of money to said contractor for the purpose of paying the weekly labor bills as they accrued, for which amounts the contractor executed notes payable on demand to appellee, which deposited the amounts of said advancements respectively in appellee's bank to the credit of the contractor, who paid the said weekly labor bills with checks drawn upon the appellee, the bank, which honored and paid the checks, thus establishing between appellee and the contractor the ordinary relationship of bank and depositor in the transaction of their affairs; that the contractor on January 20, 1939, executed a power of attorney authorizing the Government to deliver to appellee the monthly estimate pay checks on the Liberty post office contract and authorizing appellee to receive, endorse and collect same for the contractor, who deposited them in his checking account with appellee and drew checks on the account payable to appellee for any monthly sum with interest that the contractor may have requested of appellee; that such monthly transaction and such a relationship existed between the contractor and appellee from January 20, 1939, to June 13, 1939, during which time the contractor made many deposits with appellee, the total of which was $45,422.01, and drew many checks on the account. The total amount of deposits made by the Government with appellee for the contractor during said period of time was $30,980, the total loans made to the contractor by appellee was $13,382.81, and the total amount of interest paid appellee by the said contractor was $66.55; that the contractor failed to pay a part of the labor and material accounts on the contract for more than ninety days after they became due and appellant became liable for them and paid them at various times in the total sum of $11,067.97, between July 29, 1939, and March 21, 1940, and that the contractor failed to complete the post office building and appellant incurred the liabil-

ity of completing the same and did complete the same; that the Government paid on April 9, 1940, the sum of $4,084.46 due appellant, the said amount being the ten per cent retained by the Government from the monthly estimates until the completion of the contract, and the amount of said Government check of $4,084.46, deducted from the total payments for labor and material made by appellant in the sum of $11,-067.97, leaves a total balance of $6,983.51, for which amount appellant sued appellee; that on June 6, 1939, appellee received a letter from appellant stating that appellant was surety on the contractor's bond and held an assignment from the contractor of date October 10, 1938, "covering all payments, funds, money or property due or to become due," to the contractor under this Government contract and that "You are hereby notified that if there is now in your possession, any money, funds or other property representing sums due on account of the work done by the contractor upon said building, the same belongs to the undersigned by virtue of the above mentioned assignment, and if you pay the same to any person, firm or corporation other than the undersigned, or make any disposition whatsoever of such funds other than to pay the same to the undersigned, the same will be done at your own risk and peril;" that the last Government check received by appellee from the Government was for the sum of $4,180, received on June 10, 1939, and deposited by appellee in its bank, applying the sum of $2,885.36 out of the said check on a debt owed by the contractor to appellee for advancements made by appellee to contractor on the weekly payroll, as evidenced by a note payable to appellee on demand, and applying the sum of $1,-294.64, the remainder of the said Government check, to the account of the contractor as a depositor with appellee in its bank; and that the contractor checked out the said sum of $1,294.64 in due course of business and closed his account with appellee bank, on June 13, 1939.

Appellant complains in three points, in effect, that the trial court erred in refusing to award to appellant judgment for $4,180, the full amount of the Government check received by appellee after it had notice of appellant's assignment from the contractor; that the trial court erred in refusing to award to appellant judgment for the sum of $2,885.36, used by appellee out of the estimate check of $4,180, received on June 10, 1939, to extinguish the contractor's debt

to appellee after appellee had notice of appellant's assignment from contractor; and that the trial court erred in refusing to award appellant judgment for $1,294.64, the balance remaining of the estimate check of $4,180, received by appellee on June 10, 1939, and deposited by appellee to the account of the contractor after appellee had received notice of appellant's assignment.

Appellant contends that by reason of its assignment, notice of which was given to appellee on June 6, 1939, it was entitled to $4,180, the full amount of the estimate check; but, in the alternative, if it is not entitled to judgment for the $2,885.36 that appellant applied to retire the debt the contractor owed appellee, then it certainly was entitled to judgment for the remainder of the said estimate check of $4,180, the same being $1,294.64.

The appellee contends, in effect, in its counter propositions that the contractor was the owner of the money earned and evidenced by the monthly estimate checks and had a right to make an agreement with appellee that resulted in the establishment of a relationship of banker and depositor between appellee and the contractor and that as a result of such relationship appellee had the right to deposit in its bank the estimate check for $4,180 and that it had a legal right to apply the $2,885.36 to extinguish a debt owed by the contractor to appellee for money advanced by appellee to pay the weekly payroll for the contractor as evidenced by a note to appellee payable on demand; that because of the law governing the relationship of bank and depositor, appellee had the right to leave the balance of said check in the sum of $1,294.64 on deposit in the checking account of the contractor and was obligated under the law to pay the checks of the contractor in due course to the extent of the contractor's deposits; that the relationship of bank and depositor existing between appellee and the contractor could not be destroyed or altered by appellant's claim of ownership to the contractor's estimate check for $4,180 or any part of it that was on deposit with appellee; and that appellant had its remedy by garnishment proceedings which would have protected both appellant and appellee if appellant had proved ownership to the funds in question.

Appellant briefs its first and second points together and claims it acquired its right to the $2,885.36 by virtue of its assignment and under the rule of equitable subrogation.

and relies on the rules laid down in the case of Prairie State National Bank v. United States et al., 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. In that case the contractor obligated itself on May 10, 1888, to erect a customs house at Galveston. Hitchcock was surety on the contractor's bond. The contract provided for retained percentage. The Prairie State National Bank made a loan to the contractor, who gave the said bank in February, 1890, an order on, and power of attorney to, the United States Treasurer to receive the final payment of the retained percentage. In May, 1890, the contractor defaulted and Hitchcock completed the contract. The real controversy was between the Prairie State National Bank and Hitchcock. The case arose in a contest in the court of claims as to who was entitled to the retained percentage provided for in the construction contract, which retained percentage was still in the hands of the Government. The court held that Hitchcock, the surety who completed the contract, was entitled to the retained percentage still in the hands of the Government under the law of subrogation and that the Prairie State National Bank was a mere volunteer who loaned money to the contractor on the faith of a presumed agreement and according to the terms of such agreement, which loan agreement did not give the bank a superior claim over the subrogated claim of Hitchcock.

That case is unlike the instant case in that it did not involve a monthly estimate check sent to the bank for deposit to the credit of the contractor but it involved the rights of the parties to the reserve or retained percentage still held by the United States Government to secure the final performance of the contract, which was finally performed by the surety, Hitchcock. The question of the relationship of bank and depositor was not involved in the Prairie State National Bank case as it is in the instant case.

Appellant then cites the case of Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547. In that case Henningsen, the contractor, defaulted in a contract with the Government. The United States Fidelity & Guaranty Company was the contractor's surety. Henningsen had made an assignment to a Seattle bank and issued an order to the Government in favor of the bank. The suit originated as an injunction proceeding by the surety to keep the bank from collecting

the final payment from the Government. The courts followed the Prairie State National Bank case referred to above and reached the same conclusion since the principles involved were the same in the two cases. In our judgment, the Henningsen case is not any more in point with the instant case than the Prairie State National Bank case. Although appellant states in its brief after citing the above two cases only "that it is almost superfluous to cite other authorities," it does cite other authorities similar to the above two cases and following the same rules, none of which are controlling in the instant case.

In our opinion, a case in point upon principle and of similar facts is Kane v. First National Bank of El Paso, 5 Cir., 56 F.2d 534, 85 A.L.R. 362, petition for writ of certiorari denied Kane v. Pottorff, 287 U.S. 603, 53 S.Ct. 8, 77 L.Ed. 524. In that case, Kane, trustee in bankruptcy of Ware-Ramsey Company, sued the bank and others and Maryland Casualty Company intervened. The said bankrupt company had been engaged in business as a building contractor and the Casualty Company was its surety upon a contract it had with the Alpine Independent School District for the construction of a school building. On May 15, 1929, the contractor company deposited with the First National Bank of El Paso a check for $10,000 drawn to its order by said school district as a partial payment on the said contract, the bank knowing that the check was for such a payment. On May 18, said company deposited with the bank a check for $18,436.80, drawn to its order by a realty company. Both checks were on out of town banks and were received under a special agreement for collection but entered as a credit on said company's account, the bank forwarding same to a correspondent. The checks were not actually collected until May 22, but on May 21 the contractor company advised the bank that it was unable to continue in business, "whereupon the bank credited the entire balance of bankrupt's checking account, which, assuming the collection of these checks, was an amount of $24,291.10, upon notes which the bank held against the bankrupt, due May 31, and June 22, 1929, aggregating $50,000." The two checks collected totaled $28,436.80, but only $24,291.10 thereof was applied on the notes because the company drew checks against said bank deposit (pending collection of the checks) to

the amount of $4,145.70 between May 15, and May 21.

Kane, as trustee, claimed that the amount applied by the bank to the notes was a voidable preference. The Casualty Company sought judgment against the bank for the amount of the School District check in the sum of $10,000. The trial court gave an instructed verdict for the bank and rendered judgment accordingly and its judgment was affirmed. The appellate court said in part in its opinion [56 F.2d 535, 85 A.L.R. 362]: "We are not advised of any statute which requires that payments duly made to a contractor for public work be handled by him in any special way, or be given any particular application. No such contractual obligation appears in this case. In the absence of statute or stipulation otherwise the general responsibility of the contractor is credited in contracting with him, and his general resources are drawn on by him in executing the contract. Money or checks paid to him as the work progresses are the property of the contractor unincumbered by any trust, just as are payments to others for goods manufactured or services performed. The contractor's banker may receive such checks and is not bound to see to their application, nor to ascertain the state of the contractor's account with each contract; nor, if he knows it, need he govern himself in any wise with reference thereto. No wrong is done to the contractor's surety in recognizing the contractor's full title to such checks by taking them on deposit with all the consequences ordinarily attaching to such deposit."

In the Kane case the surety relied on the cases of Prairie State National Bank and Henningsen, the same two cases appellant cited in the instant case, but with reference to these two cases the court said in the Kane case: "The cases supposed to establish a trust in favor of the surety are based on Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. *That case did not involve a payment made to the contractor, but involved the reserve kept back by the United States to secure the final performance of the contract for which the surety on the bond had also bound himself. The surety having had to complete the contract claimed this reserve, which was still in the hands of the United States.* The Prairie State Bank had only an invalid assignment of it. It was decided that this reserve was a security stipulated in the con-

396

tract to be held by the creditor for the performance of the obligation, to which the surety became subrogated on performing the obligation just as he would be subrogated to any other security. *The case has no application to money not reserved as a security but paid over to the contractor. This reserve was also involved in Henningsen v. United States F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547.*" (Italics ours.)

On the same subject, in the case of State Trust & Savings Bank v. Malitz, Tex.Civ. App., 44 S.W.2d 1070, the court said:

"It is a well-settled principle of law in this state that a bank has a right to charge off and apply the amount of a depositor's account to the payment of a note held by it against the depositor, provided the note is due. (numerous authorities are cited)

"In this case, the notes held by the bank were payable on demand and the evidence does not show conclusively that demand for payment was made before payment of the checks was refused by the bank. However, this does not appear to be material. Under the rule in force in this state, a demand note is due immediately upon its execution and delivery, and without the necessity of demand for payment."

On the same subject, 6 Tex.Jur. 232, § 100, says:

"Consequent on its being a mere debtor in respect of a general deposit, the bank has an undoubted right to appropriate the deposit to or towards the liquidation of a debt due by the depositor to it. * * * where the depositor is insolvent, even a debt that has not matured may be satisfied out of the deposit upon the equitable ground that, otherwise, the debt could not be collected.

"This right of appropriation is exercisable at any time, even after an assignment by the depositor for the benefit of his creditors or his insolvency, or after service of notice of garnishment proceedings."

The same text and same volume, page 290, § 142, also says:

"When a note or other security is placed in a bank by its customer for collection or for general account, in respect of mutual dealings as such, the bank has a lien on the paper or its proceeds to secure the payment of past-due indebtedness. * * * Likewise, after maturity of its indebtedness, the bank is author-

ized to apply any proceeds when collected to the payment of its indebtedness.

"This right arises by implication out of the relationship between the depositor and the bank; it does not depend upon express agreement. The right is given by the law merchant."

Under the facts in this case and the authorities cited, we believe the trial court properly held that appellee had the right to apply the $2,885.36 to the contractor's indebtedness evidenced by a note payable on demand and appellant's first and second points are overruled.

We now consider appellant's third point complaining because of the trial court's refusal to give it judgment for $1,294.64, the balance of the $4,180 estimate check, which was deposited by appellee in its bank to the credit of the contractor.

Appellant presents its claim on the theory that the relationship of a bank and its depositor is that of ordinary creditor, and debtor, but such is not always the case. Foster et al. v. City of Longview et al., Tex.Com.App., 26 S.W.2d 1059.

Appellant's assignment from the contractor is contained within the application made by the contractor to appellant for surety bonds and the same was executed before the bonds were executed and before the work began and it is presumed that appellant had a contingent assignment conditioned only if and when the contractor defaulted.

The trial court does not make a finding as to when the contractor defaulted and the record does not disclose that any request was made for additional findings. We have made an exhaustive search in the statement of facts, which consists of 138 pages and is not indexed, but we cannot determine from the facts just when the contractor defaulted. The record does disclose, and the trial court so found, without giving any dates, that the contractor failed to pay a part of the accounts for labor and material for more than ninety days after they were due. The record does not disclose just when he failed but it does disclose that appellant paid such accounts at various times between July 29, 1939, and March 21, 1940. The record discloses and the trial court so found that appellant completed the job and received the final check for $4,084.46, dated April 9, 1940, the same being the

ten per cent retained by the Government until the completion of the contract. The record discloses that appellee received a letter from appellant on June 6, 1939, stating that it was surety on the contractor's bond and held an assignment as hereinabove set out, but the letter said nothing about the contractor having defaulted, if he had. On June 10, 1939, appellee received and deposited the estimate check for $4,180 in controversy here. The record discloses that the contractor was then a depositor of appellee and had been since January 20, 1939, was still depositing with appellee as usual and still checking as usual.

 Several texts and numerous authorities set out the general rules governing the relationship between a bank and its depositor and there is little, if any, variance between them. We cite 6 Tex. Jur. 224, § 94; page 225, § 95; page 229, § 97; and page 231, § 99, stating in effect that the relationship of banker and depositor is a voluntary one of a contractual nature, requiring the assent of both parties either expressly or implied. A depositor is one who leaves money, check or draft with the bank subject to his order, by virtue of which action the title to the money involved passes to the bank. All deposits are general deposits unless expressly made specific and a depositor is entitled to have a deposit credited to him and the bank is his debtor for the amount. The making and acceptance of a general deposit creates the relationship of debtor and creditor between the bank and the depositor.

In the case of Stone Fort Nat. Bank of Nacogdoches v. Forbess, 126 Tex. 568, 91 S.W.2d 674, 676, the Supreme Court said: "It is elementary that the making and acceptance of an ordinary or general deposit of money or its equivalent in a bank creates, as between the bank and the depositor, the simple relation of debtor and creditor. The title to the money passes to the bank, and the bank impliedly contracts with the depositor that it will repay such money on the written check or order of the depositor, not at any place, but only at the bank."

In the case of Kane v. First National Bank of El Paso, supra, the court said: "The contractor's banker may receive such checks and is not bound to see to their application, nor to ascertain the state of the contractor's account with each contract."

 While a bank deposit is ordinarily regarded as a matter transferable from one account to another, yet the bank fails in its legal duty toward the particular depositor in making such a transfer without sufficient authority to do so. People's National Bank of Tyler v. William Tell Lodge No. 27, I.O.O.F., Tex.Civ.App., 77 S.W.2d 929.

 A bank cannot change relationship of depositor without the latter's consent. Austin, Commissioner of Banking v. Matthews, Tex.Civ.App., 284 S.W. 308, writ refused.

 Under the facts in this case and the authorities cited, the relationship of bank and depositor or debtor and creditor existed between appellee and the contractor and we believe that the appellee was justified in depositing the $1,294.64 to the credit of the contractor and appellant's third point is overruled.

We have examined the assignments of error and the record carefully and find no reversible error. The judgment of the trial court is therefore affirmed.