TRINITY UNIVERSAL INSURANCE COMPANY V. FIRST STATE BANK, LIBERTY, TEXAS.

No. A-164. Decided October 25, 1944.
Rehearing overruled December 6, 1944.
(183 S. W., 2d Series, 422.)

*Wood, Gresham, McCorquodale & Martin* and *Newton Gresham,* all of Houston, for petitioner.

The trial court erred in holding that the bank had a superior right to that of a surety, in the proceeds of the check herein involved, and in holding that the bank, by collecting said check and applying its proceeds to the extinguishment of its debt against the contractor and crediting the balance of same to the contractor's account, did not become liable to the surety on contractor's bond for the amount of said check. Aetna Casualty & Surety Co. v. Hawn Lbr. Co., 128 Texas 296, 97 S. W. (2d) 460; Martin v. National Surety Co., 300 U. S. 588, 81 L. Ed. 822, 57 Sup. Ct. 531; Massachussetts Bonding & Ins. Co. v. Ripley County Bank, 208 Mo. App. 560, 237 S W. 182

*E. B. Pickett, Jr.,* of Liberty, and *Powell, Wirtz, Rauhut & Gideon,* of Austin, for Respondents.

The contractor, being the legal owner of the money earned as the work progressed and paid monthly estimate checks issued to him as payee, possessed the right to control said checks and the proceeds thereof, and by virtue of his agreement with the bank, there existed a relationship of banker-depositor, giving the bank the right to apply said checks or their proceeds in payment of payroll notes due by the contractor to the bank, and a lien in favor of the bank attached to all checks or other security deposited therein to secure the payment of any indebtedness due the bank by the owner of the security. Kane v. First National Bank of El Paso, 56 Fed. (2d) 534; Interstate Natl. Bank v. Claxton, 97 Texas 569; Coleman v. First Natl. Bank, 94 Texas 605, 63 S. W. 867.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Liberty County, Texas, by Trinity Universal Insurance Company against the First State Bank, of Liberty, Texas. As finally tried, the Insurance Company sought to recover from the Bank the sum of $4,180.00, the proceeds of a check or warrant issued by the United States Government in favor of Foley & Maugh Construction Company. In the alternative, the Insurance Company sought recovery from the Bank for a part of such check, in the sum of $1,294.64. This will later be explained. Trial in the district court resulted in a judgment for the Bank. This judgment was affirmed by the Court of Civil Appeals. 179 S. W. (2d) 391. The Insurance Company brings error.

On September 28, 1938, Foley & Maugh Construction Company entered into a contract with the United States Government to build, a post-office building in the City of Liberty, Texas, for the sum of $44,000.00. This contract provided that the contractor should build such building in accordance with plans and specifications, and should promptly make payment to all persons supplying them with labor and materials, and mechanics and laborers were required to be paid at least once a week.

As required by the contract and certain pertinent United States statutes, the contractor was required to execute and deliver to the Government two bonds, one denominated a "Performance Bond," and one a "Payment Bond." The "Performance Bond" bound and obligated the contractor "to well and truly perform and fulfill all the undertakings, covenants, conditions and agreements of said contract * * *." The "Payment Bond" bound the contractor "to promptly make payment to all per-

sons supplying labor and material in the prosecution of the work provided for in said contract * * *." These bonds were duly executed by the contractor as principal and this Insurance Company as surety, and delivered to the proper authority of the United States Government. As a preliminary to the signing of the above bonds by this Insurance Company as surety, the contractor made application to it therefor. In such application the contractor transferred and assigned to this Insurance Company as security "any and all payments, funds, money, or property due or to become due to the contractor as provided in the contract * * *."

The contract between the Government and the contractor provided that the Government would make partial payments as the work progressed. These payments were to be made at the end of each calendar month on "estimates made and approved by the contracting owner." These payments amounted to ninety per cent. of such estimate. It was provided that ten per cent. thereof should be retained by the Government until the final completion and acceptance of the building.

Several weeks after the work had started under this contract, the contractor made an arrangement with this Bank whereby the Bank agreed to advance to the contractor the amount of money necessary to pay all claims due laborers for work done on this building during the week immediately preceding the date on which each of said advances was made. In carrying out such arrangement the following procedure was followed: As labor bills accrued each week, the contractor would inform the Bank of the amount thereof, and would execute to the Bank a note due on demand for such amount. The amount of such note would be credited to the contractor's checking account in the Bank. As we understand this record, except as later mentioned, the contractor checked such money out to pay his laborers. As a part of his arrangement for obtaining money to pay his laborers, the contractor executed to the Bank a power of attorney, dated January 20, 1939, appointing the Bank his agent "to receive, endorse and collect checks in the name of the undersigned drawn on the Treasurer of the United States for account of Liberty post office contract only, and to give full discharge for the same." Thereafter, as each check issued monthly by the Government to the contractor as a partial payment was issued, it was sent to the Bank. On receipt of the check the Bank would notify the contractor of the receipt thereof, and the contractor would call at the Bank and endorse the same. The amount of such check would then be deposited to the credit of the contractor. The contractor would then give

the bank a check to pay the demand notes given under the circumstances above mentioned. It seems that the above procedure between the Bank and the contractor went on for several months without any objection thereto by the surety.

It appears that the contractor began to default in meeting payments for labor and materials used on this building as early as April, 1939. In this connection, it is shown that the Insurance Company was finally compelled to pay $11,067.97 to various persons and parties who supplied labor and materials that went into this building. The Insurance Company, however, recouped the sum of $4,084.46 of this amount from the Government. This was the amount retained until the building was finished. The Insurance Company took a net loss of $6,983.51. This net loss was occasioned by reason of the fact that the Insurance Company paid out this amount by reason of its suretyship on the above bonds, or claims that such bonds bound and obligated it to pay.

On June 6, 1939, this Insurance Company wrote the Bank the following letter, which was duly received by it:

"The undersigned, Trinity Universal Insurance Company, is surety upon the payment bond given to the United States Government by Foley & Maugh Construction Company in connection with the performance of the contract to build the new Postoffice building at Liberty. We hold an assignment from Foley & Maugh Construction Company dated October 10, 1938, covering all payments, funds, money or property due or to become due Foley & Maugh Construction Company under its contract with the Government for the erection of such building. This assignment is in force and effect, and is superior to any assignment, mortgage, conveyance or other instrument which may have been given by Foley & Maugh Construction Company subsequent to October 10, 1938.

"You are hereby notified that if there is now in your possession, or hereafter comes into your possession, any money, funds or other property representing sums due on account of the work done by Foley & Maugh Construction Company upon said building, the same belong to the undersigned by virtue of the above mentioned assignment, and if you pay the same to any person, firm or corporation other than the undersigned, or make any disposition whatsoever of such funds other than to pay the same to the undersigned, the same will be done at your own risk and peril."

On June 10, 1939, after the Bank had received the above letter of June 6, 1939, from the Insurance Company, the Bank received a check from the United States Government for $4,180.00, payable to the contractor. At the time the Bank received this check, the contractor owed it the sum of $2,885.36. We assume that this sum was owing to the Bank when it received the letter above quoted. When the Bank received this $4,180.00 check, it endorsed the same itself, purporting to act under its power of attorney above mentioned. The Bank then applied $2,885.36 of the proceeds of such check to the payment of the notes of the contractor held by it in that amount. These notes were for money advanced by the Bank to pay laborers on this building as above detailed. The balance of the proceeds of this check, $1,294.64, was passed by the Bank to the checking account of the contractor. The contractor was allowed to check this amount out. The Bank admits that it has no record showing or tending to show that any part of this $1,294.64 was checked out to pay any claims for labor or materials used in this building.

As we understand its brief and arguments, the Insurance Company contends that it is entitled to recover from this Bank the entire proceeds of the above-described $4,180.00 check. In the alternative, the Insurance Company contends that it is entitled to recover from this Bank $1,294.64, the amount left out of the $4,180.00 check after the Bank had reimbursed itself for the money advanced by it to the contractor to pay labor claims. In this regard the Insurance Company bases its claims on two grounds:

1. The Insurance Company contends that, under the facts of this record, it is the real owner of this $4,180.00 check, or the proceeds thereof, by reason of the fact that it became surety for the contractor on the above bonds. In the alternative, the Insurance Company contends that it is the real owner of at least $1,294.64 of the proceeds of the above check for the same reason.

2. The Bank contends that it is the real owner of the above $4,180.00 check, or the proceeds thereof, or at least $1,294.64 thereof, because of its express assignment of such fund by the contractor.

It is our view that the opinion of the Court of Civil Appeals correctly disposes of the contention of the Insurance Company that it is the real owner of this $4,180.00 check, or the proceeds thereof, or at least $1,294.64 thereof, by reason of the fact that

it became a surety for the contractor on the above bonds. Such opinion decides this contention adversely to the claim of the Insurance Company. In spite of this, we think that under the facts of this record the Bank is liable to the Insurance Company for that part of the proceeds of the above-described $4,180.00 check which was left after the Bank paid itself the notes representing the money it advanced to the contractor to pay labor claims. Martin v. National Insurance Co., 300 U. S. 588, 81 L. Ed. 822, 57 Sup. Ct. 531.

As already shown, the contractor in writing assigned and transferred the money represented by this check to the Insurance Company. This assignment was made long before the Bank had any transaction with the contractor. The Bank first learned of it when it received the above-quoted letter from the Insurance Company. This letter certainly informed the Bank that the Insurance Company had a claim on the proceeds of this $4,180.00 check. In spite of this information, the Bank, after paying itself, passed the remainder of the proceeds of this check to the contractor's checking account, and thus enabled such contractor to appropriate it to his own use, to the damage of the Insurance Company.

During all the time when the events here involved were transpiring, there was in force a Federal statute providing that, "All transfers and assignments made of any claim upon the United States, * * and all powers of attorney, orders, or other authorities for receiving payment of any such claim, * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." (R. S. sec. 3477; 31 U. S. C. A. 203.) In the case of Martin v. National Surety Co., supra, the Supreme Court of the United States construed the above statute, and held that it was enacted for the protection of the Government, because: "In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." This opinion then holds that: "After payments have been collected and are in the hands of the contractor or subsequent payees without notice, assignments may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was directed." This opinion also holds: "An assignment ineffective at law may none the less amount to the creation of an equitable lien when the subject matter of the assignment has

been reduced to possession and is in the hands of the assignor or of persons claiming under him with notice:"

Under the facts of this record the Insurance Company held an assignment of the funds represented by this $4,180.00 check. While this assignment was unenforcible against the United States Government, still when this check was issued and placed in the hands of the Bank it in equity was the duty of the Bank to recognize it as against the contractor and in favor of this Insurance Company. As between the Insurance Company and the contractor, the assignment was enforcible. The Bank had advanced money to the contractor to pay his labor bills. The Insurance Company would have been liable for these bills had the Bank not furnished such money. At the times the Bank furnished such money it had no notice of the Insurance' Company's assignment. The Bank therefore, in equity, had the right to pay itself out of the proceeds of this $4,180.00 check. On the other hand, as between the contractor and this Insurance Company, the latter had the right to demand and receive the remainder, and the Bank therefore committed a wrongful act in passing the amount thereof to the checking account of the contractor, and thereby placing it in the hands of such party. The amount left after paying the Bank was $1,294.64.

It is ordered that the judgments of the Court of Civil Appeals and district court be both reversed, and that judgment be here rendered in favor of the Insurance Company and against the Bank for $1,294.64.

Opinion delivered October 25, 1944.

Rehearing overruled Dec. 6, 1944.