PACIFIC INDEMNITY COMPANY,
Appellant,

v.

GRAND AVENUE STATE BANK OF
DALLAS, TEXAS, and C. M. Turling-
ton, Trustee, Appellees.

No. 15278.

United States Court of Appeals
Fifth Circuit.

June 21, 1955.

Rehearing Denied Aug. 5, 1955.

**514**

Allen Wight, Dallas, Tex., for appellant.

Hubert Dee Johnson, Carrington, Gowan, Johnson, Walker & Bromberg, Dallas, Tex., for appellee Grand Avenue State Bank.

C. M. Turlington, Marshall, Tex., pro se.

Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.

DAWKINS, District Judge.

This is an appeal by the surety on a construction contract from an adverse judgment in its suit to recover proceeds of a check issued to the contractor in partial payment for work done on the contract. Named as defendants in the suit were the bank in which the contractor deposited the check and the contractor's trustee in bankruptcy. The complaint set forth appellant's claim to the proceeds of the check on the ground that at the time it was received by the contractor, the latter was in default on the contract and the proceeds of the check were held in trust for the surety. The trustee's answer claimed the proceeds of the check as assets of the bankrupt's estate, not subject to any priority payments to appellant, and also sought to recover from the bank with the allegation that the application of a portion of the funds to offset debts due the bank by the bankrupt was an illegal preference. The bank's answer to appellant's complaint alleged its good faith in its dealings with the bankrupt and denied any knowledge of insolvency or of appellant's claim to the check at the time it was received for deposit and full credit given the bankrupt. Its answer to the trustee's claim alleged that it was entitled to use a portion of the proceeds of the check to offset antecedent debts owed by the bankrupt and that it had already turned the balance of the account over to the trustee. None of the evidence is included in the record sent to this court, the parties relying upon the findings of fact contained in the trial judge's unpublished opinion. Those facts are binding upon us and may be summarized as follows:

J. A. Sharrock & Son (herein called Sharrock or "the contractor") was a Texas partnership engaged in the general contracting business, and regularly used appellant as its surety. About November 14, 1952, Sharrock entered into a contract with the United States for the construction of facilities at Marshall, Texas; and the contract contained the customary provisions for monthly progress payments to the contractor, made upon the basis of estimates by the contracting officer, less ten percent retainages until final acceptance of the job. Appellant furnished the required performance and payment bonds for Sharrock; and by agreement, a previously executed indemnity contract between appellant and Sharrock was made applicable to these bonds. This indemnity agreement provided for the assignment by Sharrock to appellant of all plants, equipment, tools and materials owned by Sharrock and used or intended to be used in the performance of the Government contract. The assignment was to be in effect from the date of the contract if Sharrock defaulted in the payment of bond premiums or in any of its obligations under the construction contract, including the obligation to pay labor and material bills arising out of the construction work. Following these provisions was an assignment by Sharrock to appellant of all deferred payments and retain-

ed percentages on the contract, phrased as quoted in the margin.[1]

At the time it entered into the construction contract, Sharrock was banking with Grand Avenue State Bank of Dallas (herein called Bank), one of the appellees, and during late 1952 and 1953, borrowed money from the Bank. For each such loan Sharrock gave the Bank a note secured by chattel mortgage on equipment. The proceeds of the loans were deposited in Sharrock's checking account at the Bank and disbursed by checks drawn by Sharrock.

By August 10, 1953, Sharrock was in default on labor and material bills in excess of $50,000, and on August 17 following, notified appellant it would be unable to complete the contract. Appellant took over the contract and has paid or will be compelled to pay more than $200,000.

Some time between August 17 and August 22 Sharrock received a check on the Treasurer of the United States in the amount of $49,504.66 signed by the Army Finance Officer at Fort Worth, but showing nothing to connect it with the contract. However, it was actually a partial payment for work done on the contract.

On August 21 appellant demanded that Sharrock surrender the above check, and upon being refused, brought suit in state court against Sharrock alone, seeking an injunction against dissipation of the check and the appointment of a receiver therefor. On August 22 the state court issued a temporary restraining order, restraining Sharrock from expending, depositing or otherwise disposing of any funds then in its possession, or thereafter obtained, as proceeds of the construction contract. The order was conditioned upon appellant's furnishing a $5,000 injunction bond; but the record does not show whether appellant ever filed such bond.

On the day the above restraining order was issued, Sharrock mailed the check to the Bank for deposit to its account.[2] The Bank immediately gave Sharrock credit for the amount of the check and forwarded it for collection. On August 25 the state court order was amended to permit Sharrock to pay current payrolls approximating $7,500; and on the following day, appellant's attorney telephoned the Bank's attorney and delivered to the latter a copy of the amended order (although the Bank was not a party to the state court suit).

Upon the advice of its attorney an official of the Bank immediately contacted Sharrock and was told the partnership was insolvent. Thereupon, on August 26, the Bank declared Sharrock's indebtedness due and payable and charged against its account the balance on all the notes mentioned earlier, totaling $42,973.32. On August 27, Sharrock filed a petition in bankruptcy and the partnership and each of the partners were adjudged bankrupt. Thereafter, the Bank released the chattel mortgages securing Sharrock's notes and paid over

---

1. "That, at the time of the happening of any of the occurrences mentioned in clauses one, two, three, four and five of the next preceding paragraph, the Surety, as of this date, shall be subrogated to all rights, privileges and properties of the Indemnitor(s) who are named as Principal(s) in such Bond(s), and said Indemnitor(s) do hereby assign, transfer and convey to said Surety all the deferred payments and retained percentages arising out of any contract or obligation covered by such Bond(s), and any and all monies and properties that may be due and payable to said Indemnitor(s), or that may thereafter become due and payable to said Indemnitor(s) on such contracts and obligations, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said Surety and to be by it credited upon any loss, damages, charge and expense sustained or incurred by it as above set forth under any of such Bond(s) for the Indemnitor(s) * * *."

2. The trial court's opinion does not indicate whether or not the restraining order was operative when Sharrock mailed the check.

to the Trustee in Bankruptcy the balance of the account, being $5,022.82.[3]

The trial court found that even though appellant's conditional assignment had ripened into an actual assignment on or about August 21, the Bank had no knowledge of this fact when the deposit was received, and that the check had been treated as cash and as a general deposit. Relying upon authorities cited,[4] the court held that since the Bank had no notice of any rights in appellant to any funds coming into possession of Sharrock because of the contract either when Sharrock's indebtedness to the Bank was incurred or when the general deposit was made, it was entitled to treat the funds as belonging to Sharrock and to make the offset against Sharrock's account.

As between the Bank and the Trustee, the court held that the Bank unquestionably had the right to set off Sharrock's deposit. As between the appellant and the Trustee, the court found that appellant had not complied with Article 260-1 of Vernon's Annotated Civil Statutes of Texas requiring the filing of a notice of assignment in the office of the County Clerk. He concluded that appellant would therefore be unable to enforce the assignment against a good faith purchaser, and held that under Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, the assignment was inoperative against the Trustee in Bankruptcy. He entered judgment denying appellant's claim in full, and also denying the Trustee's claim against the Bank. Since the Trustee did not appeal, the holding as between him and the Bank is not before us for review.

## I. The Claim Against the Bank.

Appellant contends: that since the check was deposited for collection, the Bank was not the debtor of Sharrock but rather was its agent as provided in Article 342–702 of Vernon's Annotated Civil Statutes of Texas;[5] that since the check was not paid by the Treasurer at the time of the offset, there were no mutual debts between the Bank and Sharrock and the check remained the property of Sharrock; that because of Sharrock's default, which the trial court found to have occurred prior to receipt of the check, Sharrock received the check in trust for appellant; that since the Bank knew of appellant's claim of subrogation and assignment prior to the offset, it could not lawfully apply such trust funds to the payment of antecedent debts. It is argued that the trial court misconstrued the Texas decisions when he found notice to the Bank *prior to the offset,* but exonerated it from liability because of lack of notice *at the time the deposit was made.* In this connection,

3. In the meantime the Bank had honored and paid payroll checks on Sharrock's account aggregating $1,508.52. Neither appellant nor the Trustee questioned these payments since they were made for labor on the construction job.

4. 6 Texas Jurisprudence 232; Trinity Universal Insurance Co. v. First State Bank of Liberty, Tex.Civ.App., 179 S.W. 2d 391, Id., 143 Tex. 164, 183 S.W.2d 422; Kane v. First National Bank of El Paso, 5 Cir., 56 F.2d 534, 85 A.L.R. 362; California Bank v. United States Fidelity & Guaranty Co., 9 Cir., 129 F.2d 751.

5. "Except when otherwise provided by agreement, and except as to holders of negotiable instruments for value without notice, when an item is deposited with or received by a bank, the receiving bank (which will be hereafter referred to as the 'original agent') and each bank, other than the drawee, to which such item is forwarded in the course of collection (which banks will hereafter be referred to as 'subagents') shall be deemed the agent of the owner of the item. Such relation of agency shall exist although the original agent credits the item to the account of the owner and permits the owner to check against the credit so created, and such credit shall be conditional until the original agent has received the proceeds of the item in cash or, when authorized or accepted by it, in unconditional credit. Any withdrawal from such account during the process of collection shall first be charged to that portion of the account representing unconditional credit, and any withdrawal in excess of such unconditional credit shall be deemed an extension of credit to the owner of the item and secured by a lien upon such item and the proceeds thereof."

appellant cites authorities [6] and urges upon us its interpretation of the Texas law—that equitable or legal claims of a third party to funds on deposit with a bank are protected against offset by the bank when the bank has notice of such claims prior to the attempted offset; further that even in the absence of notice, a bank is entitled to apply the funds of third parties to its depositor's debt only to the extent that it has advanced additional monies on account of the deposit in question. Finally, it is argued that the decision of this court in Kane v. First National Bank of El Paso, supra, (footnote 4) is distinguishable because that case did not involve an assignment to the surety. Our attention is also called to features which appellant contends distinguish the other authorities relied upon by the trial court.

The Bank undertakes to distinguish the cases cited by appellant by pointing out that they involved either joint accounts or known trust accounts against which the banks had attempted to offset debts owed by the depositor in an individual or personal capacity. It denies the applicability of Article 342–702 on the ground that this situation comes within the exception clause therein and also on the theory that Sharrock here had been extended *unconditional* credit immediately when the deposit was made. It then argues that its position is protected by Article 342–709 [7] since it was never served with process in a suit asserting appellant's alleged interest in the deposit. Finally, it is urged that the facts in the cases relied upon by the trial court (see footnote 4) were so similar to those presented here that their application to this case is required.

In view of the plain wording of Article 342–702 it is difficult to see the validity of the Bank's argument that by immediately crediting Sharrock's account with the amount of the check, it became the depositor's debtor. That article provides that the agency relationship exists until the item deposited is actually collected, and it appears that the lien given to the bank is limited to the amounts paid out against that particular deposit. If that provision applies to this situation and means what it seems to say, the Bank could not prevail, for it would not have acquired the right of offset at all. However, we are referred to no cases, and have found none, wherein Texas appellate courts have interpreted or discussed this article. For this reason, and in view of prior Texas jurisprudence to the effect that a bank at least has a lien against the proceeds of a collection item when it credits the depositor's account therefor,[8] we are reluctant to base our decision on that ground. We are of the view that there is another reason why the judgment as between the Bank and appellant must be reversed; and for the purposes of this opinion, we may assume that there was a mutual debtor-creditor relationship between the Bank and Sharrock at the time the offset was made.

The basic facts involved here, the facts upon which the ultimate decision depends, are these: appellant's rights to the proceeds of the contract matured through the contractor's default *prior to*

6. Continental National Bank v. Weems, 69 Tex. 489, 6 S.W. 802; Arkansas Fertilizer Co. v. City National Bank, Tex. Civ.App., 137 S.W. 1179; Steere v. Stockyards National Bank, 113 Tex. 387, 256 S.W. 586; City National Bank v. American Surety Co., Tex.Com.App., 52 S.W.2d 259; Western Shoe Co. v. Amarillo National Bank, 127 Tex. 369, 94 S.W.2d 125; First National Bank of Schulenburg v. Winkler, 139 Tex. 131, 161 S.W.2d 1053.

7. "No bank shall be required to recognize the claim of any third party to any deposit, or withhold payment of any deposit to the depositor or to his order, unless and until the bank is served with citation or other appropriate process issuing out of a court of competent jurisdiction in connection with a suit instituted by such third party for the purpose of recovering or establishing an interest in such deposit."

8. See, for example, Kane v. First National Bank of El Paso, supra, and authorities cited therein.

'the latter's receipt of the check; the contractor's debts to the Bank were created prior to the former's default, were secured by valid chattel mortgages and, insofar as this record indicates, were not connected with Sharrock's operations under the contract; prior to the offset, without having extended any additional credit to the contractor, the Bank learned of Sharrock's default and of appellant's restraining order against Sharrock's expenditure of any of the contract payments.

It is clear, then, that appellant's rights to the proceeds of any contract payment, both by assignment and by the operation of generally accepted principles of law, had matured through Sharrock's default. That being so, the check when received and deposited was impressed with a constructive trust in favor of appellant. 54 Am.Jur. 71; City National Bank v. American Surety Co., supra; Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278. As between Sharrock and appellant, this trust or equitable claim was enforceable against the proceeds of the check even though it had been deposited. While it it true that the Bank had no knowledge of the assignment or of Sharrock's default when the check was deposited, the fact remains that before the offset, it knew that appellant, a surety company, had enjoined Sharrock's expenditure of any contract funds and it had actually received a copy of the restraining order. We find it difficult to believe that the Bank did not know what occasioned the restraining order or why it was being

furnished with a copy thereof; but however that may be, we think the Bank's knowledge was sufficient to put it upon inquiry as to the cause of appellant's state court action and the nature of its claim. Steere v. Stockyards National Bank, supra. Even if it did not know the basis of appellant's claim, inquiry would have revealed the existence of the equitable trust with which the proceeds of the check were impressed. Notwithstanding this knowledge, and despite the fact that it held valid chattel mortgages securing the antecedent debts, the Bank paid itself out of funds of which it knew or should have known Sharrock was not the equitable owner.

Our study of the cases convinces us that the problem must be resolved in the light of circumstances shown to exist when the offset was made, not when the deposit was received by the bank. Although the facts differ and there are expressions relating to the legal issues argued by these parties, the opinions in the cases cited by appellant, as well as those relied upon by the trial court and the Bank, clearly indicate to us that the courts of Texas approach such cases from the point of view of balancing the equities between the bank and the equitable owner of the fund, rather than analyzing the precise *legal* relationships between the parties. When the evidence does not clearly reflect the maturity of the equitable claim,[9] or when the debt to the bank was incurred in a manner which gives it a similar equitable claim to the fund,[10] the right of offset is recognized and the bank prevails. However, when

9. Kane v. First National Bank of El Paso, supra. In that case, Judge Sibley refused to recognize the validity of the surety company's "trust" because the fund in dispute was a progress payment on the contract received and deposited in the regular course of business *before the known default of the contractor.* We think this fact was the basis of the result as between the bank and the surety, rather than the bank's knowledge or lack of it at the time the deposit was made. In other words, the deposit was not affected with the constructive trust when it was made. See also California

Bank v. United States Fidelity & Guaranty Co., 129 F.2d 751, 755, wherein the Ninth Circuit court held that the surety could not succeed because its claim matured after the bank received payment from the contractor.

10. Trinity Universal Ins. Co. v. First State Bank of Liberty, supra. In 179 S.W.2d 391, the Texas Court of Civil Appeals held that when the bank received a contract check for deposit prior to the the maturity of the surety's claim, it could later offset debts owed by the contractor *and* could pay the balance of

the evidence clearly shows that the bank knew or should have known of the existence of the equitable claim, and when the debt owed to the bank has no connection with the fund in dispute, the bank is required to recognize the equitable ownership of the fund and may not pay itself or otherwise handle the account to the detriment of the equitable owner.[11] In Steere v. Stockyards National Bank, supra [113 Tex. 387, 256 S.W. 590], the Supreme Court of Texas quoted with approval the following statement from the annotation appearing in 13 A.L.R. 324, et seq.:

"Where the bank, although having no actual notice of the character of funds deposited with it, has knowledge of circumstances such as are regarded as sufficient to necessitate inquiry upon its part, the general rule is that the bank cannot, as against the true owner, set off such funds against the individual indebtedness of the depositor to the bank."

As to the Bank's reliance upon the provisions of Article 342–709, supra (footnote 7), we again find ourselves without the benefit of interpretive decisions by Texas Courts. The Bank simply urges that the wording of the statute is clear and that it relieves all banks of responsibility for any claims to deposited funds except where the claimant has served the bank with process in a suit asserting the claim. Appellant, on the other hand, points out that this provision is merely one article of the Texas Banking Code and "is but a codification of the well recognized rule that a bank is entitled to honor the contract it has made with its depositor as against irresponsible claims of third parties." Although this latter view seems most reasonable, we need not adopt it, for in the absence of interpretations by Texas courts or authoritative comment to that effect, we cannot hold that the Texas Legislature intended to give banks carte blanche authority to use for their own benefit funds which they know do not belong to their depositor.

## II. The Claim Against the Trustee.

As we understand his decision, the trial court held that he was bound by the test established by the Supreme Court [12] in determining whether or not appellant's claim to the proceeds of the check arose from a preferential transfer. He was of the opinion that the 1950 amendment to Section 60 of the Bankruptcy Act did not change or otherwise affect that test,

---

the account to the contractor for whatever use the latter desired. However, in 143 Tex. 164, 183 S.W.2d 422, 425, the Supreme Court allowed the offset *because the debt to the bank had been incurred to pay labor and material bills on the contract;* but the bank was held liable for the balance because it knew of the surety's matured claim when it transferred the balance to the contractor. Compare Judge Sibley's opinion in Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278, and see Judge Hutcheson's dissenting opinion therein.

11. Steere v. Stockyards National Bank, supra; City National Bank v. American Surety Co., supra; First National Bank of Schulenburg v. Winkler, supra; Trinity Universal Ins. Co. v. First State Bank of Liberty, 143 Tex. 164, 183 S.W.2d 422. Compare Western Shoe Co. v. Amarillo National Bank, supra, wherein the bank was held liable to an equitable owner of whose claim it had no notice at the time an offset was made.

12. "This is undoubtedly the effect of a literal reading of the Act. Its apparent command is to test the effectiveness of a transfer, as against the trustee, by the standards which applicable state law would enforce against a good-faith purchaser. Only when such a purchaser is precluded from obtaining superior rights is the trustee so precluded. So long as the transaction is left open to possible intervening rights to such a purchaser, it is vulnerable to the intervening bankruptcy. By thus postponing the effective time of the transfer, the debt, which is effective when actually made, will be made antecedent to the delayed effective date of the transfer and therefore will be made a preferential transfer in law, although in fact made concurrently with the advance of money." Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 436, 63 S.Ct. 679, 681, 87 L.Ed. 884.

**520**

and that appellant could not prevail over the Trustee if a subsequent purchaser in good faith could have obtained rights in the checks superior to appellant's assignment. He then held that appellant had failed to record its assignment as required by Article 260–1 and that this failure would enable a subsequent assignee who complied with the statute to prevail over appellant's assignment, citing Scarborough v. Victoria Bank & Trust Co., Tex.Civ.App., 250 S.W.2d 918. Therefore, he reasoned, appellant's assignment was "inoperative against the Trustee in Bankruptcy" and the Trustee could retain the sum paid over by the Bank "as a general asset * * * free and clear of all encumbrances and priorities."

Appellee is content to rely upon the reasoning of and authorities cited by the trial court and, in support of its views, refers us to 3 Collier on Bankruptcy, 14th Ed., Sec. 60.48, pps. 966–968. Appellant, on the other hand, argues first that it is not dependent solely upon the assignment for its claim to the check, but that as a surety who has taken over the completion of the contract from the defaulted contractor, it has a legal and equitable claim to the dedicated funds of the contract wholly independent of the assignment. It contends that when the contractor defaulted, its contingent rights as surety ripened into absolute rights and no subsequent assignment or transfer by the contractor of the contract funds yet to be paid could result in a superior lien. Finally, it argues that the purpose of the 1950 amendment to Section 60 was to narrow the broad "bona-fide purchaser" test of the Klauder case and to declare that a transfer is valid against a trustee unless a subsequent lien holder could obtain superior rights by "legal or equitable proceedings on a simple contract."

The 1950 amendment to Section 60, sub. a, 64 Stat. 22, 11 U.S.C.A. § 96, sub. a, defines a preference as a transfer to a creditor for an *antecedent* debt made while the debtor is insolvent and within four months of the date a petition in bankruptcy is filed, "the effect of which transfer will be to enable such creditor to obtain *a greater percentage of his debt than some other creditor of the same class.*" (Emphasis supplied.)

Paragraphs (2) through (8) of the amended section are statutory guides for determining when the transfer is made or perfected, for the purpose of ascertaining whether or not it was made for an antecedent debt and within the four-month period.

If the transfer be of property other than real property, and if a superior lien can be obtained subsequently by legal or equitable proceedings on the simple contract, the transfer is deemed to have been made immediately before bankruptcy. Section 60, sub. a(2). The same rule applies to any transfer which state law requires to be recorded, if the transferee has not complied with the state law. Section 60, sub. a(7)II.

In the Scarborough case, supra, the Texas court determined the priority of competing assignments from a contractor by applying Article 260–1, and held that a bank which had recorded its assignment as required by that statute had a superior lien over a surety whose assignment had not been recorded. Therefore, it is clear that appellant's assignment was open to the possible perfection of superior rights in a subsequent assignee who complied with the recording statute.

However, this only means that Section 60, sub. a as amended requires appellant's assignment to be considered as having been made immediately before bankruptcy. It does not necessarily require the holding that the assignment was a voidable preference within the meaning of Section 60, sub. a(1), since we must also determine whether or not the assignment was made to secure an antecedent debt and enables appellant to obtain a greater percentage of its debt than it would otherwise receive. The bankrupt's petition was filed on August 27, 1953, ten days after it had notified appellant of its default and six days after it had suspended all work on the contract. According to the trial court's findings appellant had already taken over the con-

tract, was paying past due bills and was completing the construction at its own expense. Hence, it is clear that even when the assignment itself took effect under the provisions of Section 60, sub. a, it was for both new and contemporaneous consideration and future obligations of the contractor, not for an antecedent debt.

 There is still another reason why the Trustee may not prevail over the surety under the facts of this case. Appellant's rights to the check, and to all future payments on the contract, do not depend upon the assignment, which actually was only an *additional* mode of insuring the protection of its rights. The contractor had defaulted before the check was received, and the trial judge found that appellant had taken over the completion of the contract. By so doing, appellant had replaced Sharrock as the obligator on the construction contract, and became exclusively entitled to the payments made thereon. It immediately went into state court to enforce its rights against the contractor, and the restraining order was issued as previously mentioned. Under such peculiar facts, we think that appellant had sufficiently established its legal right to the proceeds of the contract, independently of the assignment, to reimburse it for the work it was doing and the bills it was continuing to incur and pay. This right was superior to any which the contractor had in the check and was enforceable against the contractor.

Recognition and enforcement of this primary right against the Trustee does not affect a preference over general credi-

tors but rather prevents an unjustified "windfall" to them. The surety in this case is legally obligated to the United States to retire indebtedness against the job and to finance the completion of the construction. If it is not allowed to use the proceeds of the check in question and other unpaid contract funds for those purposes, appellant will be using its own money, even after bankruptcy, to pay both preferred and general claims against the estate and to earn additional assets for the estate. It would be increasing the assets of the estate and reducing the indebtedness, all at its own expense and for the benefit of general creditors who never had any interest in the contract funds.

It is true that Section 60, sub. a of the Bankruptcy Act, as amended, prohibits the recognition of equitable claims when the transferee has failed to take steps provided by state law for the perfection of a legal claim. Whatever may be the effect of these provisions upon the claim of a surety to unpaid funds on a completed contract, we cannot believe that they should be applied to the prejudice of a surety required to complete a defaulted contract. We therefore hold that in this case the appellant surety is entitled to prevail over the Trustee in its claim to the check in dispute and other unpaid contract funds to the extent that its obligations under the bond require it to expend monies for the payment of labor and materials and for the completion of the contract.

The judgment appealed from is reversed and the matter is remanded with instructions to enter judgment in accordance with this opinion.